In the matter of the Incorporation of the
**TOWN OF BLUE SUMMIT, Missouri.**

No. 25384.

Kansas City Court of Appeals,
Missouri.

Dec. 7, 1970.

Betsy Ann Stewart, Jack C. Terry, Independence, for proponent.

William L. Turner, H. Michael Coburn, Kansas City, for respondents. Gage, Hodges, Kreamer & Varner, Kansas City, of counsel.

CROSS, Judge.

This is an appeal from a judgment rendered by the Circuit Court reversing an order of the County Court of Jackson County entered on April 9, 1968, purporting to incorporate an approximately mile square area lying between Kansas City and Independence as the Town of Blue Summit. In the interest of clarity, we pronounce here at the outset of this opinion that the county court's order of that date is of no decretal validity and presents nothing reviewable by this court and that we will rule accordingly. From the record, which is in a state of considerable confusion, we undertake to extract essential facts in chronological order.

Proceedings for incorporation originated in the County Court of Jackson County on February 17, 1966, upon a verified petition (consisting of six documents, identical in text, differing only as to purported signatures thereon), filed by proponents seeking incorporation under provisions of Section 80.020 V.A.M.S., (all statutory references are to R.S.Mo., 1969, V.A.M.S. unless otherwise noted) which provides *inter alia* that the county court may incorporate a town or village upon petition by "two-thirds of the taxable inhabitants". Members of the county court at that time (referred to in the record as the "old court") were Judges Charles C. Curry, Morris Dubiner and Floyd E. Snyder. Aside from essential jurisdictional allegations, the petition alleged that there were 715 taxable inhabitants of the area sought to be incorporated and that it (the petition) contained the signatures of 487 individuals —10 more than necessary to constitute two-thirds of the stated number.

On April 4, 1966, upon due notice given, the county court held a public hearing at which both proponents and opponents were present. No transcript of that proceeding was preserved. After hearing evidence the county court made no decision but entered an order taking the matter under advisement.

On January 1, 1967, the personnel of the county court changed, in that Judges Charles B. Wheeler, Jr. and Alex M. Petrovic succeeded Judges Dubiner and Snyder. At that time the case was still under advisement and undecided.

On April 3, 1967, twenty-four of the petitioners filed withdrawals of their signatures, and on April 10, 1967, fourteen more petitioners filed such withdrawals. Assuming the validity of those withdrawals, the remaining signatures would thereby have been reduced to less than two-thirds of the alleged number of taxable inhabitants.

■ The first affirmative action taken by the new county court was on April 11, 1967. On that date another hearing (the second) was held to consider the merits of the petition for incorporation. Those proceedings were recorded and appear in the transcript. Evidence was presented on the issues of reasonableness of the proposition, feasibility of the municipal services needed and available, and whether two-thirds of the taxable inhabitants of the area favored incorporation. Thereupon the court made formal written findings, including recitals to the effect that the incorporation petitioned for was authorized by the facts and the law, was reasonable and proper, and should be granted. Relative to the numerical sufficiency of the petition, the court found "That the petition for incorporation filed herein has been signed by more than a majority of the taxable inhabitants residing within the area proposed for incorporation." The formal adjudication of incorporation was entered as follows:

"IT IS, THEREFORE, ORDERED, ADJUDGED, DECREED AND DECLARED that the petition for incorporation filed herein by the taxable inhabitants of the community of Blue Summit be and the same is hereby approved, and the proposed town of 'BLUE SUMMIT' be and the same is hereby declared to be a body politic and corporate as a town and the name thereof is hereby declared to be 'TOWN OF BLUE SUMMIT,' * * *".

Additionally the court declared the metes and bounds of the town and appointed five trustees to administer its affairs. The order of incorporation thus entered was not simply a ministerial act, but amounted to a judgment having the force of any other judgment rendered by a court of competent jurisdiction. 21 Mo.Digest, Municipal Corporations, ☞12(9) p. 410.

■ No appeal was taken from the judgment of incorporation entered on April 11, 1967, as is provided for by Section 49.230 V.A.M.S. Nor was review sought under provisions of Chapter 536, Administrative Procedure and Review. Consequently, that judgment became final and conclusive on May 11, 1967—hence impregnable to collateral assault and subject to question only by a direct proceeding instituted for that purpose. 21 Mo.Digest, Municipal Corporations, ☞18, p. 413.

On May 24, 1967, at the relation of the opponents of incorporation, Joseph R. Teasdale, prosecuting attorney for Jackson County, filed an action in quo warranto in the Circuit Court of Jackson County, Case No. 704, 411, attacking the validity of the April 11, 1967, judgment, on grounds that the incorporation was based on a finding that only a majority of the taxable inhabitants favored the incorporation, and that the petitions, after withdrawals, did not contain the signatures of two-thirds of the taxable inhabitants, as required by law to authorize the incorporation. Named as defendants in that action were the five individuals the county court had appointed as trustees of the town of Blue Summit. Those defendants filed separate answers denying the validity of the signature withdrawals, affirmatively asserting that the county court had jurisdiction to incorporate the town of Blue Summit by complying with all laws relative to that function, and, alleging that more than two-thirds of the taxable inhabitants had signed the petition.

While the described quo warranto action was still pending the county court attempted to amend its April 11, 1967, order of incorporation by entering another order of September 19, 1967, (without further hearing of evidence) reciting findings that "the petition for incorporation filed herein has been signed by more than *two-thirds* of

the taxable inhabitants residing within the area proposed for incorporation" and that " 'a majority' should be corrected to read 'two-thirds'."

No decision was ever rendered by the circuit court on the question at issue in the quo warranto action, that is, whether the town of Blue Summit was legally incorporated. On November 27, 1967, following a hearing of that cause in Division No. 13 of the Jackson County Circuit Court, the court found that "the record of the proceedings in the County Court is inadequate as relates to the numerical sufficiency of the petitioners for the Court to determine if the County Court exceeded its jurisdiction in incorporating the village of Blue Summit", and entered an order as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the case be remanded to the County Court for a rehearing on the issue of the proponents compliance with R.S.Mo. 80.020 as to the numerical sufficiency of the petitioners only." .

Thereafter, on March 27, 1968, the county court conducted a *third* hearing of "the case of the incorporation of the City of Blue Summit", limited to the question of "the numerical sufficiency of the petitioners only". The court again examined and considered the six sections of the petition, the signature withdrawals and affidavits pertaining thereto. Oral evidence was heard at considerable length, and the interested parties argued the merits of their respective positions.

Following that hearing, and on April 9, 1968, the county court entered its final order entitled "Order Affirming Order of Incorporation". Paradoxically, the order is based on a finding that on April 4, 1966, at the first hearing, the old court had assumed jurisdiction, determined that more than two-thirds of the taxable inhabitants

had signed the petition and then took the matter under advisement—this, notwithstanding positive testimony of members of the "old court", adduced at the March 27, 1968, hearing, that there had been no hearing, discussion, reception of evidence or a determination as to the numerical sufficiency of signatures on the petition when the matter was first heard on April 4, 1966. Stated conclusions of law prefacing the order are to the effect (1) that the petition as filed on April 4, 1966, was sufficient, and (2) that withdrawals of signatures in order to be effective must have been filed prior to April 4, 1966. The text of the attemptedly decretal portion of the order reads as follows:

"IT IS THEREFORE, ORDERED, ADJUDGED, DECREED AND DECLARED that the Order of this Court of April 11, 1967, and as amended by Order of this Court on September 19, 1967, approving the petition for incorporation of the community of Blue Summit and declaring the same to be a body politic incorporated as a town and the name thereof being declared the 'TOWN OF BLUE SUMMIT' is hereby affirmed and in all respects APPROVED."

Opponents of incorporation duly appealed to the circuit court from the order last quoted. The appeal was docketed as Case No. 716,634 in the Jackson County Circuit Court. The Honorable Paul E. Vardeman, Judge of Division No. 3, conducted the review under provisions of V.A. M.S. Section 536.140 pertaining to judicial review of administrative agencies. He reached conclusions that withdrawal of signatures could effectively have been filed up to the time the county court might determine the numerical sufficiency of the petition;[1] that the county court did not consider or determine such numerical sufficiency by its order of April 4, 1966, and that it had *never* decided that question; that therefore the signature withdrawals

---

1. As held in Attorney General's Opinion, Rice, October 14, 1938, and reaffirmed by Attorney General's Opinion, Hensley, February 27, 1956.

on April 3, 1967, and April 10, 1967, were effective and reduced the petition signatures to less than the required two-thirds majority; and, that for the foregoing stated reasons the county court "lacked jurisdiction to make its order of April 11, 1967, as amended and corrected by it on September 19, 1967, incorporating the Town of Blue Summit." Ruling that the order of the county court appealed from was not supported by substantial evidence, the circuit court entered a judgment of reversal. The proponents of incorporation have appealed from that judgment.

Contending for reversal of the circuit court's judgment and sustention of the county court's order of April 9, 1968, proponents basically submit that the "old" county court had made a determination as to the numerical sufficiency of the petition on April 4, 1966, by taking the question under advisement on that date following the first hearing on the matter involved. We decline to rule the merits of that proposition or any other issue arising from the county court's order of April 9, 1968, since, as we shall further develop, we do not consider that order to be a valid judgment presenting any reviewable question.

 The proposed town of Blue Summit was judicially declared to be "a body politic and corporate as a town" on April 11, 1967, by order and judgment of the county court entered on that day. The opponents of that action slept on their statutory rights of appeal or review and permitted that judgment to ripen into finality. Under the doctrine of res judicata it still stands as a final determination that the town of Blue Summit has been constituted a municipal corporation, and it will so remain until and unless a contrary declaration is made by a court of competent jurisdiction in a direct proceeding in quo warranto instituted for the specific purpose of ousting it from exercising municipal functions. The possibility that the April 11, 1967, judgment may have been erroneous, even on its face, does not render it void or lessen its effect as to res judicata. St. Bethel Missionary Bap-

tist Church, Inc. v. St. Louis Builders, Inc., Mo.Sup., 388 S.W.2d 776, and cases therein cited. For an authoritative text statement of the rule, we quote 46 Am.Jur.2d, Judgments, p. 610: "The doctrine of res judicata is predicated upon a valid judgment; a judgment which is null and void may not be used as a basis for the application of the doctrine of res judicata. On the other hand, a judgment does not lose its effectiveness as res judicata from the mere fact that it is irregular or erroneous, whether the judgment is sought to be used to preclude the relitigation of the same cause of action, or the relitigation of issues litigated and determined in a prior action on a different cause of action. In this connection, it is declared that the doctrine of res judicata is not dependent upon the correctness of the judgment, or of the verdict or finding on which it is based. This rule applies even though, in the first action, the pleadings are defective, or an instruction given to the jury is erroneous, or the reasons given for the judgment are unsound, or the judgment is contrary to statute."

 It is true that the opponents, as relators, have caused an action in quo warranto to be filed in the circuit court by an appropriate representative of the state. However, the circuit court wherein that case pends has not seen fit to render a decision, but instead, after conducting a hearing, remanded "the case" to the county court for the limited "rehearing" on the issue of numerical sufficiency of the petition. Several questions naturally arise from that action of the circuit court. First, our judicial curiosity is piqued to conjecture upon what authority the circuit court remanded "the case" to the county court. We leave that question unexplored except to say that, in our opinion, the ruling of the Supreme Court In Re Village of Lone Jack, 419 S.W.2d 87, directing remand of incorporation proceedings to the county court, is not authority or precedent to support the remand order in the quo warranto action. The Lone Jack case is to be distinguished as a proceeding reviewed by the

circuit court and appellate courts under Chapter 536, Administrative Procedure and Review.

■ Other questions inherent in the circuit court's order of remand are: What judicial function was the county court thereby commanded to perform after determining the issue of numerical sufficiency? Was it charged to enter its own judgment on the ultimate issue of whether the Town of Blue Summit had undergone legal incorporation? Or did the remand order contemplate that the county court certify the result of the hearing to the circuit court as additional record evidence to be considered by the circuit court in the quo warranto action? Obviously the county court interpreted the remand order in the light of the first alternative above outlined, since it undertook to enter a final order and certified no further record of proceedings to the circuit court from which the remand order emanated. We withhold views on these questions except to say that in our opinion a circuit court, vested with jurisdiction of a quo warranto proceeding challenging the legality of action by an inferior tribunal, has no authority to abdicate its function as arbiter of the controversy and delegate it to the very agency whose previous action is the subject of inquiry in the quo warranto case. For that reason alone, it must be held that the county court's attempted judgment entry on March 27, 1968, has no force and effect and is a nullity.

■ There is further reason to support our holding that the order appealed from has no validity. It is fundamental that there can be only one final judgment in a case and that when there exists a final judgment from which there has been no appeal, any subsequent judgment entered is void. This rule was applied in Irwin v. Burgan, 325 Mo. 309, 28 S.W.2d 1017, where the Supreme Court held that proceedings culminating in a second decree were *coram non judice* and void because the first decree, rendered at a prior term,

was a final judgment in the cause and had not been vacated. In State ex rel. Berbiglia v. Randall, 423 S.W.2d 765, the Supreme Court reaffirmed the rule as it had been stated in Irwin v. Burgan. The court held in Thomas v. Mullins, Tex.Civ. App., 127 S.W.2d 559: "The rule is well settled that the entry of a second judgment in the same case is not a vacation of the first judgment and, if there is nothing to show the first judgment was vacated or set aside, the second judgment is a nullity. Black on Judgments, Vol. 1, par. 304, p. 380; Kibby et al. v. Leon, Tex.Civ.App., 241 S.W. 1064; Cooksey v. Jordan et al., 104 Tex. 618, 143 S.W. 141; Cartee v. Blacketor et al., 179 Miss. 665, 176 So. 532." The foregoing rule was approved by the Supreme Court of Texas in Mullins v. Thomas, 136 Tex. 215, 150 S.W.2d 83. Also see Kruger v. Duckwall et al., 78 Ind. App. 577, 134 N.E. 895. Application of the rule to the instant case is obvious without factual comment.

■ The circuit court has undertaken to extinguish the April 9, 1968, order by reversing it on the ground it is unsupported by substantial evidence. The decision of this court will likewise have the effect of vacating that order, but for a different reason than expressed in the circuit court's findings which preface its judgment. Our action is not predicated on the merits of appeal issues presented by the parties and accepted for decision by the circuit court, but is based entirely on the ground that the April 9, 1968, order is null and void, and has no standing as a legal judgment. To the extent only that the circuit court's judgment decrees reversal of the county court's order, and thus judicially declares it to be of no effect, we will affirm such action. However, let it be emphasized that we do not adopt the circuit court's findings or conclusions of law which underlie its ultimate judgment of reversal. We specifically disaffirm its finding that the county court "lacked jurisdiction to make its order of April 11, 1967, as amended and corrected by it on September 19, 1967, in-

corporating the Town of Blue Summit", because that question is not determinable in this appeal and may not be adjudicated collaterally.

It should be understood that this opinion is in no sense a review of the county court's judgment rendered on April 11, 1967, declaring the Town of Blue Summit to be "a body politic and corporate as a town." Whether that judgment is supportable or erroneous is not for decision here. We allude to it solely to demonstrate that it stood as a bar to rendition of the *second* judgment to like effect. And, we repeat that unless and until a judgment of ouster be rendered in a quo warranto action, the only available remedy to test the legality of Blue Summit's incorporation, the county court's judgment of April 11, 1967, will remain conclusive as to the corporate status of the subject town, even though the judgment may be irregular or erroneous. In this connection, we do not venture to comment on the present status of the quo warranto suit, identified as Case No. 704,411 in the Jackson County Circuit Court, other than what has been noted hereinabove at some length.

Limited as stated above, we enter affirmance of the circuit court's judgment reversing the order entered by the county court on April 9, 1968.

All concur.