In the Matter of the **INCORPORATION OF the VILLAGE OF LONE JACK, Missouri.**

**No. 25537.**

Kansas City Court of Appeals, Missouri.

Aug. 18, 1971.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1971.

Application to Transfer Denied Nov. 8, 1971.

Rufus Burrus, Independence, for appellants.

Milton B. Edmonson, Greenwood, Irving Achtenberg and D. L. Manford, Kansas City, for respondents.

HOWARD, Judge.

This is the "second time around" for this case. A petition for the incorporation of the village of Lone Jack was filed with the county court of Jackson County, Missouri on September 30, 1963. After hearing evidence, the county court issued its order incorporating the village. Objections to the incorporation had been filed by some twenty-five inhabitants of the area to be incorporated and they duly appealed from the order of incorporation. This appeal was ultimately determined by the Supreme Court of Missouri in In Re Village of Lone Jack, 419 S.W.2d 87. The evidence heard by the county court had been preserved by means of a tape recorder but was apparently lost or destroyed and was not certified as part of the record on this appeal. Because of the lack of such evidence, the Supreme Court determined that the matter could not be properly reviewed and ordered the case sent back to the Jackson County Court for a rehearing of the evidence. Such rehearing was had. The Jackson County Court reaffirmed its order incorporating the village of Lone Jack. An appeal was duly taken by the objectors. The circuit court affirmed the order of the county court and an appeal has been duly taken to this court.

The petition for incorporation describes by metes and bounds an area of 3,840 acres. This equals six square miles of land. It is somewhat irregular in shape and is approximately three miles long north and south at its longest point, and two and a half miles east and west at its widest point. It lies both north and south of U. S. Highway 50 in the southeast corner of Jackson County, Missouri. The petition alleges that there are 272 inhabitants of this area, of which 167 are taxable inhabitants. The petition was signed by 134 of the 167 taxable inhabitants which is more than the two-thirds required by statute. The county court made findings in accordance with these allegations of the petition and the evidence, including a census, supports such findings.

The objectors to this incorporation alleged that the unincorporated village of Lone Jack covered only 160 acres and that the remaining 3,680 acres proposed to be included in the incorporation consisted solely of lands used for agricultural and pastural purposes which had no relation to and could not properly be made a part of the village as it was proposed to be incorporated. On the rehearing in the county court and on this appeal, the parties join issue on the sole point of whether or not the great majority of the land proposed to be included within the incorporation was used for agricultural purposes with the result that its inclusion in the proposed incorporation renders the order of the county court invalid. The parties seem to be in at least tacit agreement that an unincorporated village known as Lone Jack has existed in the southeast corner of Jackson County for many years. It antedates the Civil War. Various witnesses for the objectors stated that this village covered approximately 160 acres, mostly north of U. S. Highway 50 in the area where Bynum Road runs to the north. The proponents of incorporation repeatedly objected to the testimony so limiting the size of the existing village but it appears from all of the evidence that the land which had been platted prior to the petition for incorporation lies within or very close to this approximately 160 acres characterized as the original village. There was no comprehensive detailed plat setting out all of the buildings and ownership of the various tracts

of land included within the proposed area of incorporation. Understandably, some of the oral testimony is very difficult to pinpoint geographically.

The evidence of the proponents was that there were 89 families resident within the proposed incorporated area. Of the heads of these families, 24 were retired, 13 worked in Lone Jack and 52 were employed in metropolitan Kansas City or at other places outside of the village. The evidence was that land prices in the area ranged from $500.00 to $700.00 per acre or more, and everyone seems to be in agreement that a satisfactory return cannot be secured from farming land so highly priced.

It appears that there were 58 houses in the central village at the time of the rehearing. Of these, 56 were occupied and 2 were vacant. The village also has two churches; the Baptist Church has a congregation of 153 and the Christian Church 140. There is a high school and grade school with 180 students. This number of students has remained constant for approximately the last fifteen years. There have been very few new houses built in the central village area in the last few years; the grocery store ceased to operate in 1963; the locker plant and the barber shop both ceased business prior to the rehearing in the county court. An antique shop and a liquor store have commenced business within the last five years. There is a new post office.

Since the objectors admitted the existence of the central village, the real contest concerned the land lying outside such central village and proposed to be included in the incorporation. Consequently, the evidence as to the situation in the central village came in almost incidentally. It is rather fragmentary and imprecise.

Proponent witnesses either on direct or cross examination gave testimony concerning the ownership and use of more than forty tracts of land within the area. These ranged from town lots to tracts in excess of two hundred acres. With the exception of the town lots or tracts of an acre or so, it appears that most of the land was used for pasture with some cultivation of crops and some land lying idle. The objectors introduced a plat, together with a list of the ownership of land purporting to show all of the residences outside of the so-called central village. This showed 31 houses outside of the central village area at the time the petition for incorporation was filed in 1963. Between that time and the rehearing before the county court, three of these houses had been destroyed; one burned; one was destroyed by tornado and one was taken by the new highway. One new house had been built in the intervening period. The acreages owned by the owners of these houses totalled approximately 2,600 acres. The difference between this figure and the total acreage outside of the admitted central village is not accounted for. The objectors' evidence was to the same effect as that of the proponents that the land was used for pasture with some cultivated crops and some lying idle. From this evidence the conclusion is inescapable that the vast majority of the land included within the boundaries of the proposed incorporation was, in fact, devoted to agricultural pursuits and not used for urban purposes.

The proponents of this incorporation contend that such use was incidental and temporary. They point to the fact that very few, if any, inhabitants made their living solely from farming; that the price of the land was so high that a reasonable return could not be secured from devoting the land to agricultural purposes and that the land was, in fact, being held either for future sale at a still higher price or for a future development for some purpose other than farming. On this basis, they contend that the land was not agricultural in nature and that, therefore, the doctrines heretofore expressed in the decided cases prohibiting the inclusion of large amounts of agricultural land within the boundaries of an incorporation as beyond the jurisdiction of

the court court, has no application to the case at bar. This is essentially the contention made and disallowed by the supreme court in State ex inf. Eagleton v. Champ, Mo., 393 S.W.2d 516. Even though the highest and best use of the land may be for some purpose other than agricultural, it does not follow that its present use is not, in fact, agricultural in nature and the county court is without jurisdiction to, or it exceeds its jurisdiction by, including such land within the boundaries of the proposed incorporation. Such inclusion is not authorized by statute.

If the proponents' argument was well taken, then the evidence would indicate that almost all unincorporated land in Jackson County, Missouri would be subject to incorporation without relation to the pre-existence of an unincorporated village or town. We, therefore, hold in accordance with the decision in the Champ case, supra, that these contentions are not valid and furnish no ground for the inclusion of such land within the proposed incorporation.

■ This contention of the proponents also limits unduly the test for determining whether or not land may properly be included within the limits of the incorporation. Not only is agricultural land to be excluded but the area of incorporation is to be limited to these lands lying within the natural boundaries of the unincorporated town or village and which are, in fact, an integral part of the municipality to be created.

The test as set out by prior cases has two parts, or perhaps it would be more accurate to say that it is approached from two different directions: (1) land used solely for farming or agricultural purposes is not to be included in any great amount, and (2) only land which is devoted to community purposes and is an integral part of the community to be incorporated shall be included within the incorporation. Thus, in the prior appeal of this case the supreme court said, In Re Village of Lone

Jack, 419 S.W.2d 87, l.c. 90: "The question of whether land is used only for farming or agricultural purposes and not devoted to or constituting a part of the community is inherent in a proceeding before a county court to incorporate into a new village acreage of this size occupied by such few inhabitants." It is further said, l.c. 91: " * * * these facts do lend some credence to the assertion that this sparsely settled large acreage is farm land not devoted to village purposes and not reasonably required to be incorporated within the community." In State ex inf. Eagleton v. Champ, supra, 393 S.W.2d 516, l.c. 525, the court pointed out that 280 acres of the 314.3 acre incorporation were not " * * * necessary or required as a matter of convenience to a reasonable exercise of village government. There was no proof to show that this acreage was an integral part of an existing unincorporated village and so surrounded as to lie within the natural boundaries of the village as established." The court there concluded that, l.c. 524, " * * * much and probably most of the area incorporated * * * was not within a pre-existing unincorporated village."

In Petition to Incorporate the City of Duquesne, Mo., 322 S.W.2d 857, the court stated, l.c. 863: " * * * that it was not the intent of the Legislature that a rural or agricultural area having no natural connection with and not constituting a part of the unincorporated city or town be included" within the area incorporated by the county court. The case of State ex rel. Crow v. Flemming, 158 Mo. 558, 59 S.W. 118, involved the incorporation of Webster Groves in St. Louis County, having a population of 2000–3000. All of the land included within the incorporation had been platted except about 70 acres, although some of the platted land had not been built upon and was still used for agricultural purposes. The court there said, l.c. 59 S. W. 120: " * * * lands used for agricultural purposes solely may become so surrounded and connected with lands used for town and city purposes, as to be and constitute a part thereof, so that the incorpo-

ration of the town or city would, as a necessity, include within its natural boundaries such lands * * *." This holding in the Flemming case was summarized in the Champ opinion, supra, 393 S.W.2d l.c. 522, as follows: "It simply recognized that lands being used for agricultural purposes could become such an integral part of an unincorporated town, lying within its natural boundaries, as to be properly includable in the town or village created by the county court, even though it might not be formally subdivided and platted."

State ex inf. Rosenberger v. Town of Bellflower, 129 Mo.App. 138, 108 S.W. 117, involved two unincorporated towns which substantially surrounded a 39 acre wedge-shaped tract of agricultural land which separated them. The county court undertook to incorporate the two towns and the 39 acre tract plus 600 acres of farm land surrounding and adjoining the two towns. It was held that the inclusion of the 39 acre tract was proper as being within the natural boundary of the new town but that the inclusion of the 600 acres of farm land invalidated the attempted incorporation.

In the case at bar the proponents of incorporation did not make any attempt to show that the land outside the so-called central village was within its natural boundaries or had a community interest with the pre-existing unincorporated village. Consequently, the record before us is completely devoid of any evidence which would support an affirmance of the order of the county court on this theory.

■ Section 80.020, RSMo 1969, V.A.M. S., authorizes the county court to issue its order after proper proceedings, incorporating an unincorporated town or village which actually exists. This statute does not authorize the incorporation of an area which is not, in fact, a town or village and does not authorize the inclusion of lands outside the existing town or village (and which would normally be agricultural lands) within the limits of the incorporation. These limitations on the authority of the county court were early set out by our supreme court in State ex rel. Patterson v. McReynolds, 61 Mo. 203. This case concerned the incorporation of the town of Butler, in Bates County, Missouri. The existing town covered between 250 and 300 acres. The proposed area to be incorporated included 900 additional acres of land surrounding the actual town. The supreme court decided that the inclusion of such surrounding agricultural lands within the proposed incorporation was not authorized by statute and was beyond the authority of the county court. The doctrine of this case was expressly followed and approved by our supreme court en banc in State ex inf. Eagleton v. Champ, 393 S.W.2d 516.

■ Following the doctrine expressed in the foregoing cases and applying it to the facts in the case at bar, we can only conclude that the vast majority of the six square mile area included within the proposed incorporation was, in fact, being used for agricultural purposes (even though it might be held in speculation for a higher price for other uses in the future) and that this area was not within the boundaries of the existing village; it was not an integral part of the existing village and had no logical relationship to the existence and function of the village as a municipality. It follows that the judgment of the circuit court affirming the order of the county court of Jackson County, Missouri, incorporating the village of Lone Jack, must be and the same is hereby reversed.

All concur.