STATE of Missouri on the information of William S. Brandom, Prosecuting Attorney of Clay County, Missouri, ex rel. Lawrence W. KING et al., Appellants,

v.

VILLAGE OF PRAETHERSVILLE, a Municipal Corporation, et al., Respondents.

No. KCD 27986.

Missouri Court of Appeals, Kansas City District.

Oct. 12, 1976.

Thaine Q. Blumer, Kansas City, for appellants.

Bernard D. Craig, Sr., Edward P. Moran, Richard M. Shteamer, John E. Craig, Kansas City, for respondents.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

This is an original action in quo warranto seeking to have the original order of incorporation of the Village of Praethersville declared invalid and void and further seeking an order declaring that the individual respondents (village officials) are holding their offices without authority. The cause was tried to the court below without a jury,

and judgment was rendered for defendants. The issues presented by the parties on this appeal are first, whether the village was validly incorporated and second, whether successful prosecution of this cause of action is barred by the doctrine of laches.

On January 20, 1951, the County Court of Clay County, Missouri, issued an order incorporating the Village of Praethersville, the boundaries of said village encompassing some 1500 acres. Both at the time of incorporation and at the time of trial a maximum of 40 acres could fairly be characterized as urban. The remainder of the land was agricultural. The village population at the time of incorporation is unknown, but there were at least 91 taxpayers, and some 40 houses. Business establishments consisted of a bottled gas company, a combination grocery store-service station and a lumber yard. The latter two are now gone but there is still a store and several apple orchards. The village also contains one small schoolhouse. At the time of trial the village population was 126, residing in 55 houses.

At the time of incorporation the villagers had no plans for residential and industrial development and have since pursued none. Building permits for the houses built since incorporation have been issued orally by the city council. None of the existing agricultural land has been platted, and the physical character of the village itself has changed very little over the years. At the time of incorporation the existing roads and streets had been built by the state or county and no additions have been made thereto, though there has been some maintenance work done by the village. There is no municipal water supply or sewage treatment system, though abortive attempts were made at one time to gain the former by joining an adjacent rural water district.

The village council started functioning at least as early as 1952, and has enacted ordinances. At the time of trial the council had four members and a mayor. The village also has a clerk, treasurer, zoning commissioner, marshal and deputy marshal (unpaid) and a police judge (who has yet to hear a case). Since incorporation the village has levied and collected taxes based on a $0.50 per $100 valuation as determined by the Clay County Court. The village has also received revenue sharing funds from the Federal Government, and derives revenue from franchise agreements with five utility companies. Total yearly revenue at the time of trial was some $3,900–$4,000. There have been no bond issues. Expenditures by the village include those for road maintenance, repair and maintenance of the village fire truck and station, expenses of the zoning commission and police department, salaries for the village clerk and treasurer, expenses of the city council, legal notices, legal advice and preparation of tax bills to Clay County Court. The fire truck was purchased with money obtained in fund raising events and donations and is manned by volunteers. The zoning commission's activities have been minimal; the zoning code was adopted in 1964 and merely zoned the whole village residential. The only change in zoning was made in 1969 when the present relators successfully applied to have their land rezoned to heavy industry.

■ Under the standards set forth in § 80.020 RSMo 1969 and under Missouri case law, it cannot be gainsaid that the incorporation of the village in this case was improper. Section 80.020 provides in pari materia that a petition for incorporation shall be presented to the county court and shall set forth the metes and bounds of the village and commons. Under Missouri law there is no probation against incorporating land which "may become so surrounded and connected with lands used for town and city purposes, as to be and constitute a part thereof, so that the incorporation of the town or city would, as a necessity, include within its natural boundaries such lands." *State ex inf. Crow v. Flemming,* 158 Mo. 558, 59 S.W. 118, 120 (1900); *State ex rel. Scott v. Lichte,* 226 Mo. 273, 126 S.W. 466 (1910); *State ex inf. Rosenberger v. Town of Bellflower,* 129 Mo.App. 138, 108 S.W. 117 (1908). However, "county courts have no right or jurisdiction to incorporate surrounding or adjacent farming lands into

cities, towns or villages." *State ex inf. Eagleton v. Champ,* 393 S.W.2d 516, 522 (Mo. banc 1965); accord *State ex rel. Patterson v. McReynolds,* 61 Mo. 203 (1875); *Petition to Incorporate the City of Duquesne,* 322 S.W.2d 857, 863 (Mo.1959); see *In Re Incorporation of Village of Lone Jack,* 471 S.W.2d 513 (Mo.App.1971). Thus, "(1) land used solely for farming or agricultural purposes is not to be included in any great amount, and (2) only land which is devoted to community purposes and is an integral part of the community to be incorporated shall be included within the incorporation." *In Re Incorporation of Village of Lone Jack, supra* at 516.

A review of the evidence herein, in light of the foregoing rules, makes it clear that the 1951 incorporation was improper. Only some 3% of the land is urban and there was no evidence of an actual connection between the urban and agricultural land. Therefore it follows that judgment should be entered for relators, unless relief should be denied because of the 22 year delay which has intervened between the date of incorporating and the filing of this action. Respondents vigorously contend that the cause of action here is barred by that consideration under the doctrine of laches.

It is well settled in Missouri that the state may be barred by laches from successfully maintaining a quo warranto action challenging the validity of a village, city or school district. *State ex inf. Eagleton v. Champ, supra* at 528. No fixed amount of time need elapse before the doctrine of laches is invocable; rather, each case must be decided on its particular facts. *Champ, supra* at 528. The general meaning of laches is that the party seeking relief has delayed his action for an unreasonable and unexplained length of time resulting in disadvantage to the other party. *Metropolitan St. Louis Sewer District v. Zykan,* 495 S.W.2d 643 (Mo.1973); *State ex rel. McIntosh v. Rainey,* 397 S.W.2d 344 (Mo.App. 1965).

The incorporation of the village was ordered in 1951, and this quo warranto proceeding did not begin until 1973. During the 22 years between those dates, the village effectively served the purposes envisaged by the inhabitants of preserving a separate school district so that their children would not have to go into Mosby for school, and of preventing the annexation of Praethersville by either Excelsior Springs or Mosby. Moreover, the incorporated village proceeded to function as a local municipality in the following respects: (1) a city council was elected and regular elections for staggered terms have been conducted ever since; (2) the village council has held regular meetings; (3) the council kept minutes showing business transacted and ordinances passed; (4) a zoning ordinance was adopted; (5) building permits were issued; (6) an attorney was appointed and he has been paid for services to the village; (7) a local Civil Defense unit has been organized, has formulated emergency plans for the village, is subject to annual inspections by the National Guard, and makes monthly reports to the state director; and (8) the village has been otherwise recognized by other branches of government, especially through payment to the village of federal revenue sharing funds and cooperation between the village and the Clay County Court with respect to the levy and collection of property taxes. All of these eight numbered activities were referred to in the *Champ* opinion, as factors among others relevant to the application of the laches doctrine. Those factors have even more weight in this case where the acts extended over a 22 year period as compared to a period of only 3 years 8 months in *Champ.*

Moreover, additional factors support application of laches here. The village has maintained a full complement of appropriate officials; it has collected taxes and utility franchise revenue; it has maintained roads and installed traffic signs; it owned and maintained a police car at one time and until the cost made the continuance impractical; it acquired and still maintains other police and fire fighting equipment; and it has sent designated individuals to school for training in law enforcement. Under all of the evidence, and particularly taking into

account the very long period of the village's existence before any challenge, this action should be held barred by laches.

There is another legal principle which equally supports the trial court's ruling. As very recently pointed out in *State ex inf. Graham ex rel. Bishop v. Hurley,* 540 S.W.2d 20, Missouri Supreme Court en banc, handed down September 13, 1976, in quo warranto proceedings at the relation of private parties (as in the present case) it is not only required that the government attorney exercise his discretion in the public interest, but the law also "requires that the court in its discretion grant the government attorney leave to file the information." That principle has long been applied in this State in proceedings brought to oust a municipality and has been expanded to allow exercise, in the final disposition of quo warranto cases, that discretion which was originally only exercised in allowing the information to be filed. *State ex rel. Crain v. Baker,* 104 S.W.2d 726, 730 (Mo.App.1937) and cases there cited.

■ Flowing from that principle, the Missouri cases hold that the writ will not be granted "unless some good purpose can be served by it." *State ex inf. Otto ex rel. Harrington v. School District of Lathrop,* 314 Mo. 315, 284 S.W. 135 (banc 1926); and that the state must show some "detriment to accrue from permitting the municipality to continue." *State ex inf. Eagleton v. Champ, supra.* Generally speaking, the state should show some equity in favor of suddenly blotting out the legal existence of a town after long tolerating it as a working municipality. The controlling considerations are well stated in *State ex inf. Wallach ex rel. H. B. Deal & Co., Inc. v. Stanwood,* 208 S.W.2d 291, 296 (Mo.App.1948):

"The equities revealed by the evidence show that the corporate existence of this village had gone unquestioned for over ten years, during which time it has grown and prospered. It has elected its officers annually, levied taxes, contracted for water and fire protection, put up street signs, repaired streets, caused fire hydrants to be installed, and enacted ordinances. It is not in debt but, on the contrary, it has a fair balance in the bank. These are the equities that favor the village, while on the part of the relator he has purchased some land and wishes to put it to a use prohibited by a village ordinance and he brings this action to render void the existence of the village so that he will be unhampered. * * * Villages are important segments of our political structure affording those citizens with common interest who live in close relationship with each other the means through which their local problems can be solved, the law enforced, and community interests advanced. The courts are hesitant to say that an omission or error in the incorporation of a village brought to attention many years after it occurred makes a nullity of the village's corporate existence and its officers usurpers of powers and duties that do not in law exist. The equities must strongly favor the State before it can be so held for it is its duty to nurture and promote villages and cities and the orderliness established by them rather than to destroy their existence. There are no equities of record here of such moment that they would warrant the drastic action sought by the State and it must be held that its laches have precluded it from the judgment it seeks."

This court holds similarly herein. The evidence shows the village to be a viable entity and one which since incorporation has developed a municipal government and provided concomitant services. Relators, who want to develop land within the village boundaries, were granted a requested zoning change by the village. Actual development, however, was thwarted because the village lacks a municipal water supply and sewage treatment system and the City of Excelsior Springs refused to allow relators to run the necessary connective lines. The village is not actively blocking the development. On balance the equities on the side of the village and the policy of our courts to nurture and promote extant municipal entities, combined with the dearth of showing

of equities on the part of the State, call for an affirmance.

Affirmed.

All concur.