In re Petition for INCORPORATION OF VILLAGE OF TABLE ROCK.

State of Missouri ex rel. Lisa Reed and Alan Skeen, Respondents,

v.

The County of Stone, The County Commission of Stone County, Missouri, George Cutbirth, Denny McCrorey, and Jerry Dodd, constituting the Stone County Commission, Appellants.

No. 27261.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 8, 2006.

William McCullah, Galena, for appellant.

Gary W. Allman, Allman, Ingrum & Wilson, P.C., Branson, for respondent.

ROBERT S. BARNEY, Judge.

Lisa Reed ("Ms. Reed") and Allen Skeen ("Mr. Skeen") (collectively "Respondents") filed a "Petition for Incorporation of Village of Table Rock" with the County Commission of Stone County, Missouri ("the County Commission").[1] The County Commission denied Respondents' petition and Respondents appealed the matter to the Circuit Court of Stone County, Missouri. Following a hearing, the circuit court reversed the County Commission's decision denying Respondents' petition and required the issue of the incorporation be submitted to a vote of the residents of the proposed village. The County Commission now brings four points on appeal. Point Four is dispositive; accordingly, only it will be reviewed. We reverse the judgment of the trial court.

Respondents filed their "Petition for Incorporation of Village of Table Rock" with the County Commission on February 3, 2004, utilizing the provisions of section 72.080, after having previously filed two, similar petitions to incorporate the proposed village under section 80.020 without success.[2]

The County Commission held a hearing on March 30, 2004. The record reveals that the area proposed to be incorporated

---

1. Appellants George Cutbirth, Denny McCrorey, and Jerry Dodd are all duly elected members of the County Commission and it appears that they "were named only in their positions as Commissioner[s] of Stone County, and not in their individual capacity."
We note that the petition for incorporation in this matter was signed by the following people: Steve Plaster; Mr. Skeen and his wife, Tana; and Ms. Reed and her husband, Don; however, only Mr. Skeen and Ms. Reed appeal and appear as Respondents in the present matter.

2. Both section 72.080 and section 82.020 will be discussed in detail later in this opinion.

All statutory references are to RSMo 2000.

(hereinafter referred to as "the proposed village") is composed of "a little over 700 acres...." At the hearing, Mr. Skeen testified that "seven or eight" people lived in the proposed village, including himself, his wife, and his son. He testified that his family had lived in the proposed village for approximately six months and that they moved there from Taney County, Missouri, so he could take a property management position working for Robert Plaster. Evergreen National Corporation appears to own all of the land in the proposed village.[3]

Mr. Skeen further testified that Ms. Reed is also employed by Robert Plaster. In addition to his own home, Mr. Skeen stated that in the proposed village there was a "big glass house;" Ms. Reed's home; several maintenance buildings; two unoccupied A-frame houses; and another unoccupied house. Mr. Skeen related that both he and his wife were registered voters, but that his twenty-one-year-old son was not registered to vote. He also stated he believed the proposed village was "about 10 miles ..." from Kimberling City, Missouri, by road.

Henry Geblin, the geographic information system administrator for Stone County, testified that, based on his "Auto CAD Map" calculations, the proposed village was, at its nearest point, located "5,185 feet or .98 miles" from Kimberling City, Missouri. He also stated that "[j]ust about all of [the distance between the proposed village and Kimberling City]" is covered by the water of Table Rock Lake.

On April 27, 2004, the County Commission entered its "Order Denying Petition for Incorporation of Village of Table Rock." The County Commission found, *inter alia*, that the proposed village "is surrounded by forested areas and lake, and is not connected with lands used for town or city purposes;" that "there is no evidence that any more than two of the residents of [the proposed village] were registered to vote, or could even vote if an election was ordered ...;" that the petition violated section 72.130 in that the proposed village "is, at its nearest point, 5,185 feet or .98 miles from Kimberling City, a city of the fourth classification;"[4] and that the proposed village "is populated by only seven or eight full-time residents, one or more part-time residents, and occasional visitors." Additionally, the County Commission noted in its Order that it had received a letter from the Army Corps of Engineers "advising [it] that approximately 300 acres of Corps of Engineers property was included in the legal description of [the proposed village]" and "that Engineer Regulation # 405–1–12 ... provides that requests for annexation [of Corps of Engineers land] can only be considered from state political subdivisions." As such, the County Commission found Respondents "cannot include Corps of Engineers property in their proposed incorporation...." In conclusion, the County Commission declared that

[r]ather than recognizing and legitimizing an existing city, town, or village, the effect of granting [Respondents'] petition would be to create a land development tool that could avoid County ordinances and regulations that would otherwise be applicable to [the proposed village]. Public policy is not well

3. According to the record, Evergreen National Corporation is owned by "Mr. Plaster." It is unclear if this reference is to Steve Plaster or to Robert Plaster.

4. Section 72.130 sets out in pertinent part:

[e]xcept as provided in sections 72.400 to 72.420, no city, town, village or other area shall be organized ... *adjacent to or within two miles* of the limits of any city of the first, second, third or fourth classification....

served if landowners are permitted to incorporate sparsely populated areas, thereby possibly avoiding the County's planning and zoning ordinances ... Owners and developers of land should not be allowed to create their own entities that will allow them to enact ordinances, establish police forces, or lend the authority of a municipal corporation to their development activities.

Thereafter, on May 10, 2004, Respondents appealed the County Commission's decision to the Circuit Court of Stone County pursuant to section 49.230.[5] At the ensuing hearing before the trial court "no evidence was presented except to provide the transcript of the hearing before [the County Commission] with all the Exhibits introduced at said hearing" followed by brief oral arguments from both parties.

The trial court entered its "Findings of Facts, Conclusions of Law, and Judgment" on May 26, 2005. The trial court overruled the County Commission's order which denied the incorporation of the proposed village; found the petition was filed "pursuant to [section] 72.080 ..." and that the petition "contains the required number of signatures and otherwise complies with the requirements of [section] 72.080 ...;" held that the proposed village "is more than two miles from any entity described in [section] 72.050 ... other than Kimberling City ..." but that "Table Rock Lake

lies between the [proposed village] and Kimberling City ... and the distance from the [proposed village] by road to Kimberling City ... is more than two miles;" and ordered that the issue of the incorporation of the proposed village be submitted to the voters. Further, the trial court attached what it termed "a corrected legal description for the [proposed village] to correct the inclusion on the Western boundary of the [proposed village] to be contiguous with the Fee Taking Line of the Corps of Engineers boundary for Table Rock Lake." This appeal followed.

■■■ Both parties are in agreement that this matter derives from a non-contested administrative hearing before the County Commission.[6] On appeal of a noncontested case, such as the matter at hand, this Court reviews the trial court's judgment, not the decision of the County Commission. *State ex rel. Rice v. Bishop*, 858 S.W.2d 732, 737 (Mo.App.1993). Accordingly, the scope of our review is dictated by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Mosley v. Members of Civil Serv. Bd. for City of Berkeley*, 23 S.W.3d 855, 860 (Mo.App.2000); *see* Rule 84.13(d).[7] "Consequently, we review the circuit court's judgment to determine whether its finding that the agency decision was unconstitutional, unlawful, unreasonable, arbitrary, capricious or the product of an

---

**5.** Section 49.230 sets out that "[a]ppeals from the decisions, findings and orders of county commissions shall be conducted under the provisions of chapter 536, RSMo."

**6.** "The key to the classification of a case as 'contested' or 'noncontested' is the requirement of a hearing." *Cade v. Dept. of Soc. Servs.*, 990 S.W.2d 32, 36 (Mo.App.1999). "An administrative decision is considered to be 'noncontested' if 'made without any requirement of an adversarial hearing at which a measure of procedural formality is followed.'" *Id.* at 37 (quoting *Strozewski v. City of Springfield*, 875 S.W.2d 905, 906 (Mo. banc

1994)). "The fact that there is some contest between the parties does not, in and of itself, make for a contested case." *Id.* at 36. "The standard of judicial review of noncontested cases differ from that of contested cases. Judicial review of noncontested cases is governed by [section] 536.150." *Id.* at 37.

**7.** *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d). All Rule references are to Missouri Court Rules (2005).

abuse of discretion rests on substantial evidence and correctly declares and applies the law." *Cade*, 990 S.W.2d at 37. As such, we will affirm the circuit court's judgment unless it is unsupported by substantial evidence, is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32.

Turning now to the County Commission's fourth point relied on, the County Commission maintains the trial court erred "in interpreting and applying [section] 72.080 . . . ." Specifically, it argues that

the language 'a city of the class to which its population would entitle it pursuant to this chapter' and 'be incorporated pursuant to the law for the government of cities of that class' requires consideration of the size factor in [section] 72.050. The 'third element' of [section] 72.080 requires a consideration of factors appropriate under [section] 72.050, [section] 80.020, and the *Duquesne*[8] case.

Preliminarily, we observe that " '[t]he fundamental rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning.' " *Clanton v. Teledyne Neosho*, 960 S.W.2d 532, 534 (Mo.App.1998) (citation omitted). "Furthermore, 'every word, clause, sentence and provision of a statute must have effect.' " *Stith v. Lakin*, 129 S.W.3d 912, 917 (Mo.App.2004) (quoting *Civil Serv. Comm'n of St. Louis v. Members of the Bd. of Aldermen of St. Louis*, 92 S.W.3d 785, 788 (Mo. banc 2003)). " '[I]t will be presumed that the legislature did not insert idle verbiage or superfluous language in a statute.' " *Id.* at 917 (quoting *Civil Serv. Comm'n of St. Louis*, 92 S.W.3d at 788). Additionally, "[w]here one statute deals with a particular subject in a general way, and a second statute treats a part of the same subject in a more detailed way, the more general should give way to the more specific." *Casey v. State Bd. of Reg. for the Healing Arts*, 830 S.W.2d 478, 481 (Mo.App.1992). "The general presumption is that the legislature acts with the knowledge of statutes involving similar or related subject matters." *Mid–America Dairymen, Inc. v. Payne*, 990 S.W.2d 648, 654 (Mo.App.1999).

We begin our analysis by observing that the statutes in Chapter 72 deal with the "Classification and Consolidation of Cities, Towns and Villages." As such, the sections found in Chapter 72 define, among other things, the population parameters for "Third class cities," section 72.030;[9] the population parameters for "Fourth class cities," section 72.040;[10] and the population parameters for "Villages," section 72.050.[11] Accordingly, it is clear that the

---

8. *In re Petition to Incorporate the City of Duquesne*, 322 S.W.2d 857 (Mo.1959).

9. Section 72.030 sets out that "[a]ll cities and towns in this state containing three thousand or more inhabitants, which shall elect to be a city of the third class, shall be cities of the third class."

10. Section 72.040 sets out that:

1. All cities and towns in this state containing five hundred and less than three thousand inhabitants, and all towns existing under any special law, and having less than five hundred inhabitants which shall elect to be cities of the fourth class, shall be cities of the fourth class. 2. Notwithstanding the population requirements of subsection 1 of this section, all incorporated villages as of August 13, 1982, may elect by majority vote of the voters therein to be a city of the fourth class and shall retain such classification at its option.

11. Section 72.050 states:

1. All towns not now incorporated in this state containing less than five hundred inhabitants are hereby declared to be villages.

intent of the legislature in Chapter 72 was to set out specific population definitions and distinctions among cities, towns and villages.

In our careful reading of Chapter 72, it also becomes clear that the legislature never intended for a "city" to be equated with a "village," because distinct population differences were delineated for each type of municipality. For example, section 72.050 expressly provides that "[a]ny *village* in this state now or hereafter having more than two hundred inhabitants may by majority vote of the voters therein *elect to become a city of the fourth class* and shall retain such classification at its option." (Emphasis added).

Chapter 72 also contains two quite similar provisions relating to how a city, town or village may *change classifications* in the sense of becoming *a city to which its population permits.* Section 72.070 provides that any "city, town or village ... may elect to become *a city* of the class to which its population would entitle it. . . ." (Emphasis added). In other words, an already *incorporated* city, town or village

may elect to become a *city of a different class,* as long as it meets the population requirements for that different class of municipality.

Additionally, the chapter provides at section 72.080.1 that "[a]ny *unincorporated* city, town or *other area* of the state may ... become a *city* of the class *to which its population* would entitle it. . . ." [12] (Emphasis added). In other words, any "*unincorporated* city, town or *other area* ..." may decide to become a "city" as long as the "*unincorporated* city, town or *other area* ..." meets the population requirements for that class of city. Utilizing the plain and ordinary meaning of section 72.080.1, as we must, *Stith,* 129 S.W.3d at 917, it is clear that there exists no legislative authority for an "unincorporated city, town or other area of the state" to become a "*village*" pursuant to the provisions set out in section 72.080, as Respondents contend.

On the other hand, Chapter 80 very specifically sets out the manner in which *unincorporated* towns or villages may become *incorporated* towns or villages. [13] In

2. Any village in this state now or hereafter having more than two hundred inhabitants may by majority vote of the voters therein may elect to become a city of the fourth class and shall retain such classification at its option.

**12.** Section 72.080.1 states:

Any unincorporated city, town or other area of the state may, except as otherwise provided in sections 72.400 to 72.420, become a city of the class to which its population would entitle it pursuant to this chapter, and be incorporated pursuant to the law for the government of cities of that class, in the following manner: whenever a number of voters equal to fifteen percent of the votes cast in the last gubernatorial election in the area proposed to be incorporated shall present a petition to the governing body of the county in which such city or town or area is situated, such petition shall describe, by metes and bounds, the area to be incorporated and be accompanied by a

plat thereof, shall state the approximate population and the assessed valuation of all real and personal property in the area and shall state facts showing that the proposed city shall have the ability to furnish normal municipal services within a reasonable time after its incorporation is to become effective and praying that the question be submitted to determine if it may be incorporated. If the governing body shall be satisfied that a number of voters equal to fifteen percent of the votes cast in the last gubernatorial election in the area proposed to be incorporated have signed such petition, the governing body shall submit the question to the voters.

**13.** Section 80.020 states:

Whenever two-thirds of the taxable inhabitants of any town or village within this state shall present a petition to the county commission of the county, setting forth the metes and bounds of their village and commons, and

fact, the majority of the provisions in Chapter 80 detail the operational details of running a town or village, and sets out the Board of Trustees, as the body which is charged by statute with operating an incorporated town or village. *See* § 80.010 *et seq.* Other provisions relating to taxation, police powers, and elections are also included in Chapter 80.

In their petition, Respondents seek to *incorporate* the proposed *village* using the ostensible authority of section 72.080.1; however, the plain and ordinary reading of section 72.080.1 grants no such authority as to a village. Rather, as previously related, the provisions of Chapter 72 set out how "any city, town or village ..." may become "a *city* of the class to which its population would entitle it ...." § 72.070 (emphasis added).

Statutory construction " 'is a question of law, not judicial discretion.' " *Eckenrode v. Dir. of Revenue,* 994 S.W.2d 583, 585 (Mo.App.1999) (quoting *State v. Haskins,* 950 S.W.2d 613, 615 (Mo.App.1997)). Based on the foregoing, we determine the trial court erred as a matter of law in approving Respondents' petition to incorporate the proposed village utilizing the provisions of section 72.080.1. *Murphy,* 536 S.W.2d at 32. Under the foregoing circumstances, the trial court was without jurisdiction to require the issue of the incorporation be submitted to a vote of the residents of the proposed village. *See State ex rel. City of Perryville v. Pickle,* 564 S.W.2d 905, 909 (Mo.1978).[14]

We also determine that, as the County Commission essentially contends, the pro-

praying that they may be incorporated under a police established for their local government, and for the preservation and regulation of any commons appertaining to such town and village, and the county commission shall be satisfied that two-thirds of the taxable inhabitants of such town or village have signed such petition, and that the prayer of such petition is reasonable, the county commission may declare such town or village incorporated, designating in such order the metes and bounds thereof, and thenceforth the inhabitants within such bounds shall be a body politic and corporate, by the name and style of "The town of" naming it and by that name they and their successors shall be known in law; have perpetual succession, unless disincorporated; sue and be sued; plead and be impleaded; defend and be defended in all courts and in all actions, pleas and matters whatsoever; may grant, purchase, hold and receive property, real and personal, within such town and no other, burial grounds and cemeteries excepted; and may lease, sell and dispose of the same for the benefit of the town, and may have a common seal, and alter the same at pleasure.

14. While the trial court in the present matter relied upon *In re Incorporation of Village of Independence Trails,* 726 S.W.2d 396 (Mo. App.1987), as authority for allowing Respon-

dents to incorporate under section 72.080, it is our view that *Independence Trails* does not expressly stand for that proposition. First, in *Independence Trails* there was no specific challenge to the use of section 72.080 as an incorporating provision. *Id.* at 396–97. At most, as pointed out by the trial court itself, *Independence Trails* "tacitly approved ..." of the use of section 72.080 as a method for incorporation. Second, in discussing the incorporation provisions of Chapter 72, *Independence Trails* cited to *State ex rel. Boone v. Jackson County,* 541 S.W.2d 312, 315 (Mo. App.1976), and *Incorporation of Maryland Heights v. Von Romer,* 687 S.W.2d 600, 601 (Mo.App.1985)—both of which involved the incorporation of *cities* pursuant to section 72.080. Saliently, the court in *State ex rel. Boone,* 541 S.W.2d at 313, made reference to *In re Town of Blue Summit,* 461 S.W.2d 332, 333 (Mo.App.1970), a case in which the incorporators successfully utilized section 80.020 to incorporate as a "town." Lastly, in *Independence Trails* the reviewing court's primary concern was not the actual use of section 72.080 as an incorporating statute; instead, *Independence Trails* was concerned with the interpretation of section 72.130 and the "standing" that another community had to challenge an incorporation for violating section 72.130. *Independence Trails,* 726 S.W.2d at 397.

posed village cannot constitute a village or town by any statutory definition.[15]

In our analysis, we recognize, of course, that the "definitions of 'town' or 'village' are rather illusive and imprecise." *State ex rel. City of Perryville*, 564 S.W.2d at 908. Based on our reading of the case law, the determination of whether a proposed area meets the definition of an unincorporated or incorporated "village" must necessarily be determined on a case by case basis. Outside of the population provisions set out in section 72.050, our research does not reveal a statutory definition for the term "village." As set out by the Supreme Court of Missouri, "'[t]he name "village" always carries to the mind the idea of a small urban community.'" *State on Information of Eagleton v. Champ*, 393 S.W.2d 516, 524 (Mo. banc 1965) (quoting *State ex rel. Scott v. Lichte*, 226 Mo. 273, 126 S.W. 466, 470 (Mo.1910)). The court in *Eagleton* also observed that a village has been defined as "[a]ny small aggregation of houses in the country, being in general less in number than in a town or city and more than in a hamlet." *Id.* at 524 (internal quotation omitted).

In *In re Incorporation of Village of Lone Jack*, 471 S.W.2d 513, 514 (Mo.App. 1971), petitioners sought to incorporate a village of 3,840 acres that contained some 272 inhabitants of which 167 were "taxable inhabitants." "The objectors to this incorporation alleged that the unincorporated village ... covered only 160 acres and that the remaining 3,680 acres ... consisted solely of lands used for agricultural and pastural purposes which had no relation to

and could not properly be made a part of the village as it was proposed to be incorporated." *Id.* In reversing the judgment of the circuit court which had affirmed the county court's grant of incorporation, the Western District of this Court noted that section 80.020 "does not authorize the incorporation of an area which is not, in fact, a town or village...." *Id.* at 517. It determined that the

> test as set out by prior cases has two parts, or perhaps it would be more accurate to say that it is approached from two different directions: (1) land used solely for farming or agricultural purposes is not to be included *in any great amount,* and (2) only land which is *devoted to community purposes and is an integral part of the community to be incorporated* shall be included within the incorporation.

*Id.* at 516 (emphasis added); *see also State ex rel. King v. Praethersville*, 542 S.W.2d 578, 580 (Mo.App.1976) (holding that where only three percent of the land in the village was urban and there was no evidence of actual connection between the urban and agricultural land, the incorporation was improper; however, because the village had been in existence for twenty-two years, the *quo warranto* suit seeking to declare the incorporation invalid was barred by laches).

In *State ex rel. City of Perryville*, 564 S.W.2d at 908, our supreme court determined that the county court of Perry County, Missouri, did not have jurisdiction to order the incorporation of a small sliver

---

**15.** We note that *Duquesne*, which is mentioned by the County Commission in its point relied on, is of limited assistance in the present matter. In *Duquesne*, 322 S.W.2d at 859, the inhabitants of a "territory" comprised of between 500 and 3,000 inhabitants petitioned for incorporation as a *city of the fourth class* pursuant to the provisions of section 72.080.

Consequently, *Duquesne* is factually distinguishable not only from a population standpoint, but also from the standpoint that in the instant matter Respondents are seeking to incorporate as a *village* and not as a city of the fourth class as the inhabitants in *Duquesne*. *Id.* at 860.

of territory which had only 34 residents and 21 property owners, because it did not constitute a town or village by any definition. While observing that the fact the proposed village had but 34 residents was "not controlling," the *Perryville* court noted the incorporation of the proposed village "shaved off" an existing subdivision; constituted a blatant subterfuge to evade section 72.130; and actually violated the prohibitions of section 72.130. *Id.* at 908–09. The point being made is that the supreme court determined the incorporation of the proposed village was in error "because (1) it did not constitute a 'town' or 'village' by any definition...." *Id.* at 909.

 Here, the record shows the proposed village is composed of a "little over 700 acres;" the six or seven buildings and the 700 acres of the proposed village are all owned by Evergreen National Corporation; approximately 300 acres of the proposed village is owned by the United States Army Corps of Engineers; the proposed village is occupied by only seven or eight full-time residents, one or more part-time residents, and occasional visitors; both Respondents had lived in the proposed village for only about six months at the time of the hearing; and both Respondents are employed by Robert Plaster.

Noticeably missing in the recitation of the record are other signs of a "small urban community." *Eagleton,* 393 S.W.2d at 524. Besides the paucity of population, the record is devoid of a showing of an existing village or town as these terms are commonly defined. *See Village of Lone Jack,* 471 S.W.2d at 517. There is little showing of a connection between any "village" or "urban area" and the agricultural land sought to be incorporated. *State ex rel. King,* 542 S.W.2d at 580. There has been no recitation in the record of other possible indicators of a small, urban community such as the existence of churches, parks, schools, or a single commercial establishment. There is little or no showing that any portion of the proposed village is devoted to community purposes or that the proposed village is anything other than forest land on which there is an occasional home. *See id.* In short, the proposed village does not meet the definition of a village. Point Four has merit.

The judgment of the trial court is reversed.

BATES, C.J., and GARRISON, J., concur.