STATE of Missouri ex rel. Elvin
BOONE, Appellant,

v.

JACKSON COUNTY, Missouri,
Respondent.

No. KCD 27772.

Missouri Court of Appeals,
Kansas City District.

Aug. 2, 1976.

Motion for Rehearing and/or Transfer
Denied Sept. 15, 1976.

James L. Swarts, Jack C. Terry, Independence, for appellant.

Will Bunch, County Counselor, Richard F. Schmidt, Special Asst. County Counselor, Kansas City, for respondent.

Before PRITCHARD, C. J., ELLIOTT and McFARLAND, JJ., and CONNETT, Special Judge.

FRANK D. CONNETT, Jr., Special Judge.

Relator filed a petition with the respondent County Legislature of Jackson County. This petition was signed by residents of an unincorporated area of Jackson County known as Blue Summit, pursuant to Section 72.080, RSMo.1971 Supp., seeking permission to hold an election to incorporate as a city. The petition was denied by the respondent. Relator then had issued an alternative writ of mandamus from the circuit court, which was quashed after a hearing on the return, and relator has appealed. Those interested in the history of the efforts to incorporate this area may read *In re Town of Blue Summit*, 461 S.W.2d 332 (Mo.App.1970).

On oral argument before this court, respondent contended that the appeal should be dismissed because mandamus is not the proper remedy; that relator could and should have appealed from the decision of the county legislature pursuant to Section 49.230, RSMo.; that since there was an adequate remedy at law mandamus would not lie. *In re Incorporation of City of River*

314 ■

*Bend*, 530 S.W.2d 704, 708 (Mo.App.1975), holds such to be the law. If respondent had moved to dismiss on this ground in the trial court when the alternative writ of mandamus was issued in September of 1974, it would have been sustained. However, *State to the Use of Nee v. Tippin*, 217 Mo.App. 480, 268 S.W. 665 (Mo.App.1925), states that the claim that mandamus is not the proper remedy must be raised at the trial court, and to raise it for the first time on appeal comes too late. To dismiss the case on such a motion raised at this late date would permit respondent to gain an advantage by their own dilatoriness. Further, mandamus is an adequate vehicle to bring before the court the issues between the parties in this case; thus, respondent's contention that the appeal should be dismissed is denied. See also Subsection 1 of Section 512.160 RSMo.

Relator in this case presented a petition containing the requisite number of signatures to respondent legislature. The legislature, pursuant to Jackson County ordinances, had an investigation made, held a hearing and denied the petition on the grounds that the petitioners had not met the objections of the Jackson County Planning Commission and Department of Public Works and the Clerk of the legislature, and that the petitioners had failed to state facts showing that the proposed city would have the ability to furnish normal municipal services within a reasonable time after its incorporation.

Section 72.080, RSMo. 1971 Supp. provides that a certain number of qualified electors of an unincorporated area may present a petition to the governing body of their county asking for an election to be held to incorporate the area sought to be incorporated. The petition must include a plat of the area, state the population and assessed valuations of both real and personal property in the area and state facts showing the proposed city shall have the ability to furnish normal municipal services within a reasonable time. The statute then provides that if the governing body shall be satisfied that the required number of quali-

fied electors have signed the petition, it shall declare an election. The parties seem to agree that the petition in this case did on its face conform to the statute.

■ The parties agree that the petition made allegations as to the proposed city's ability to furnish normal municipal services within a reasonable time after its incorporation. The respondent does not admit that it does state such facts. However, the parties do not argue the point so we pass it by with the observation that the allegations of the petition in this case appear to be a statement of conclusions rather than a statement of facts from which a conclusion might be drawn that the proposed city could provide such services. Our function in this case is not to review the decision of the respondent in denying the petition but to determine if the respondent had the power to deny the petition for any reason since it was sufficient on its face.

Relator contends that respondent's sole obligation when a petition is presented is to check the signatures and then declare and hold the election if there is enough qualified signatures on the petition. Respondent's response is that it is not so limited; that if all they are to do is to count the signatures—a ministerial act—then the language requiring a statement of the proposed city's ability to furnish normal municipal services within a reasonable time is meaningless. This would be true if the statement were for the respondent's benefit, but it is not meaningless if the statement is for the consideration of those electors to whom the petition is presented for signing, nor would it be meaningless to those going to the polls to cast their vote on the proposition.

The respondent takes the position that the governing body has an obligation to investigate the proposal to incorporate and determine whether or not it is feasible and beneficial to have the area incorporated and, if not, to refuse to hold the election on the proposed incorporation. Respondent further contends that even if the statute limits the governing body of a county to counting the signatures, it does so only for those governing bodies which are county

courts; that governing bodies of charter counties, such as Jackson County, have a broader power by virtue of their charter and may refuse to declare an election to incorporate which in the judgment of the governing body (here the county legislature) is not feasible or beneficial.

■ We shall rule this latter contention first. This statute is not a grant of power to the governing body of counties. It is a grant to the majority of the electors of an unincorporated area of the right to incorporate. It sets out the method of so doing. The statute designates the governing body of the county as the agency to carry out the election if the petition conforms to the requirements of the statute. Neither the statute nor Article VI of the Missouri Constitution grants any power to charter counties to limit the right of people of unincorporated areas to incorporate.

Respondent relies upon Section 18(c) of Article VI of the Missouri Constitution as it appeared before adoption of a new section at the General Election, November 3, 1970, by quotation of the former language, " *   * may provide for the vesting and exercise of legislative power pertaining to public health, police and traffic, building construction and planning and zoning, in the part of the county outside incorporated cities *   *   *." The quoted words were eliminated in the new section, but as newly adopted, Section 18(c) does not affect the grant of the power to the majority of the electors of an incorporated area of the right to incorporate under the statute as above discussed.

■ We also note that prior to the amendment to this statute in 1971 it provided that the designated agency to whom the petition was to be presented was the county court. When the statute was amended in 1971 the words "governing body of the county" were substituted for the words "county court". From this we deduce that the state legislature had no intention of treating counties with county legislatures any different from counties with county courts. The term "governing body of the county" more aptly described county legislatures than they do county courts.

■ We rule that respondent County Legislature as the governing body of a charter county has the same obligation and role as does the governing body of any other county in reviewing petitions to incorporate.

■ We next consider what the obligation or role of the governing body is when a petition to hold an election to incorporate is presented to it. Certainly, the statute requires it to satisfy itself that the required number of qualified electors have signed the petition. Since no other agency is designated and the petition is filed with the governing body of the county, it is apparent that this governing body is required to determine the sufficiency of the statements to be contained in the petition. But nothing in the statute authorizes them to substitute their judgment for that of the electors as to whether or not the proposed incorporation is feasible and beneficial. That is apparently what the respondent did when it found petitioners had not met the objections of the proposed incorporation that were raised by the joint report of the Jackson County Planning Commission, Director of Public Works and Clerk of the Legislature.

■ It appears to us that the function of the governing body is to determine the legality of the proposed incorporation before declaring an election. Whereas it is the function of the voters to determine if the proposed incorporation is feasible and beneficial to their interest.

In the past it has been determined that under this statute county courts (although delegated no authority in the creation of cities [see *State v. Crismon*, 354 Mo. 174, 188 S.W.2d 937 (Mo.banc 1945); and *In re City of Uniondale*, 285 Mo. 143, 225 S.W. 985 (1920)]) do have the power to deny the incorporation when to grant the incorporation would be to do so "knowing its order would be held void on review," *Petition to Incorporate The City of Duquesne*, 322 S.W.2d 857 (Mo.1959). In this case the Suprème Court, after an extended review of prior cases, upheld the action of the County

Court of Jasper County in denying a petition under Section 72.080 RSMo 1949 to incorporate an area which was not an unincorporated city or town, as the statute then required before the words "other area of the state" were added in the 1971 amendment.

▪ From the *Duquesne* case we conclude that the respondent could investigate and if it determined that the facts stated in the petition showing that the proposed city should have the ability to furnish normal municipal services within a reasonable time were false, or that the facts stated patently showed that the city could not furnish normal municipal services within a reasonable time, it would be authorized to deny the petition. In fact, it would be its duty to do so to prevent the illegal creation of a city or to prevent the useless expense of holding an election to create a city that was subject to being ousted by a writ of quo warranto. This is not to say that the respondent may substitute its judgment for that of the petitioners or the voters as to whether or not a proposed city could furnish normal municipal services within a reasonable time, or what services would be normal or what time would be reasonable, or that the decision would not have to be supported by competent and substantial evidence and not arbitrary and capricious. Sections 49.230, 536.140, RSMo.

▪ It appearing that the respondent does have the power to investigate the sufficiency of the petition and under certain limited circumstances to deny a petition, the granting of such petition is not a ministerial act; thus, mandamus will not lie. The judgment of the trial court in quashing the alternative writ of mandamus is affirmed.

Whether or not this power was exercised arbitrarily and capriciously or the decision supported by competent evidence we do not decide. This inquiry was foreclosed when appellant elected to petition for the issuance of a writ of mandamus rather than to appeal the decision.

All concur.