Virginia Lee CHERRY,
Plaintiff-Respondent,

v.

The CITY OF HAYTI HEIGHTS and
David Humes, Mayor,
Defendants-Appellants,

Mary Emma Branch, Tax Collector,
Defendant.

No. 59950.

Supreme Court of Missouri,
En Banc.

March 13, 1978.
Rehearing Denied April 10, 1978.

Shulamith Simon, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for appellants.

James E. Reeves, Ward & Reeves, Caruthersville, for respondent.

John D. Ashcroft, Atty. Gen., Dan P. Card, II, Asst. Atty. Gen., Jefferson City, for amici.

SEILER, Judge.

This case was transferred here by this court on application of defendants-appellants following a decision against them by the Springfield district of the court of appeals. We sustained the application to transfer because it raises questions of general interest and importance pertaining to a collateral challenge by a private party to the incorporation of a municipality and an alleged departure from established principles governing such challenges, where questions of laches, de facto incorporation, and absence of appeal from the order of incorporation are involved. We will treat the case as though it were here on original appeal. Mo.Const. Art. V, § 10.

Plaintiff Virginia Lee Cherry, to prevent the assessment and collection of taxes on her real property by the city of Hayti Heights, which result she seeks to obtain by striking at the legal existence of the city, filed her individual suit for declaratory

judgment that the incorporation of the city of Hayti Heights by order of the Pemiscot County court on December 28, 1972, was invalid, and that defendant city and its officers should be enjoined from levying or otherwise asserting jurisdiction over her 121 acres of farm land located within the purported city limits. Plaintiff contended that because of claimed non-compliance with the statutory mandates for the incorporation of cities and towns, §§ 72.010 *et seq.* RSMo 1969, *as amended*, Supp.1975, the county court proceedings were null and void. The circuit court entered summary judgment in her favor. We reverse and direct entry of judgment in favor of defendants.

Defendants filed their answer, denying the alleged defects and insufficiencies of the incorporation proceedings. Defendants also pleaded the defense of laches on the part of plaintiff and failure on her part to appeal the ruling of the county court authorizing the incorporation election or its subsequent order of incorporation. Defendants, in addition, answered plaintiff's interrogatories. Plaintiff then filed a motion for summary judgment. Thereafter, defendants filed their motion to dismiss the petition for failure to state a claim upon which relief could be granted. Subsequently, defendants filed the affidavit of Mayor David Humes, of Hayti Heights, in opposition to plaintiff's motion for summary judgment and also in support of their motion to dismiss. No counter-affidavits were filed by plaintiff; rather, plaintiff at the hearing on the motions in the trial court offered in evidence as exhibits the answers of the defendants to the interrogatories, together with certain records of the county court, the latter being identified by the county clerk, who testified in person.

■ Where summary judgment proceedings are involved one rule is that "[t]he facts stated in the affidavits and exhibits filed by defendant [or plaintiff] in support of its motion for summary judgment to which plaintiff [or defendant] filed no verified denial stand admitted for the purpose of the motion for summary judgment,"

*Dietrich v. Pulitzer Publishing Company,* 422 S.W.2d 330, 333 (Mo.1968). "Once a motion for summary judgment is made and supported by affidavit, the adverse party can no longer rest on the mere allegations or denials in his pleadings, 'but his response, by affidavits or otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.'" *Hurwitz v. Kohm,* 516 S.W.2d 33, 36 (Mo. App.1974); *See Waltz v. Cameron Mutual Ins. Co.,* 526 S.W.2d 340, 343 (Mo.App.1975). The foregoing applies in the case before us. Additionally, defendants, by filing the affidavit of Mayor Humes (which also stands uncontradicted by plaintiff) in support of their motion to dismiss, turned said motion into a "speaking" motion, which is expressly permitted by our rule 55.27(a), *see Empiregas, Inc. v. Hoover Ball & Bearing Co.,* 507 S.W.2d 657, 660 n. 4 (Mo.1974). Rule 55.-27(a) provides further that such a motion is to be treated as one for summary judgment and disposed of as provided for in the summary judgment rule, rule 74.04.

Thus, the case finds both sides moving for summary judgment and relying on the same proof with no significant dispute between them as to the facts set forth in the affidavits and the exhibits.

These facts are as follows:

At the October 17, 1971 regular meeting of the city council of Hayti, Missouri, a committee of citizens representing the contiguous but unannexed community of Hayti Heights visited the meeting and presented a petition for annexation of their community into the city limits of Hayti.

Their purpose was to secure water, sewer, fire and police protection, street improvements, garbage collection and other city services. The Hayti Heights community was located immediately west of Hayti. Therefore, under § 72.130, RSMo 1969, before it could be incorporated, it had first to request inclusion by extension of boundaries of the existing city, Hayti, and that failing, it could, after expiration of one year, seek incorporation of its own under

§ 72.080, RSMo 1969. As the incorporation ultimately worked out, the two communities lie side by side with a common boundary between much of the east side of Hayti Heights and the west side of Hayti.

At the October 17, 1971 meeting, the city attorney explained the legal procedure and limitations on the annexation of additional territory and the finances presently available to the city of Hayti. The citizens committee and aldermen then discussed their mutual desire and the various possible ways for the Hayti Heights community to receive the benefit of federal financial assistance, the committee being of the opinion that it might be advantageous to their community to incorporate as a separate city but that the consent of Hayti was a precondition thereto.

Whereupon the city of Hayti aldermen unanimously adopted a motion granting such consent and any other cooperation to aid the citizens of the Heights community in receiving much needed federal and state assistance for the municipal services which the city of Hayti was unable to provide.

A petition for incorporation with the requisite number of signatures was duly filed with the county court of Pemiscot County on November 13, 1972[1] and within 280 days following the date on which the first signature was affixed to the petition.[2] The petition described by metes and bounds the area to be incorporated, was accompanied by a plat thereof, stated the approximate population of the area, the assessed valuation of all real and personal property therein and stated the facts and basis on which the proposed city would have the ability to furnish normal municipal services within a reasonable time after incorporation and prayed that an incorporation election be held. The county court thereupon ordered that an election be held on the question of incorporation on December 19, 1972, desig-

nated the polling places and the hours of election and appointed judges and clerks of the election. Notice of said election was published in a properly qualified weekly newspaper ·of general circulation in Pemiscot County, the Missouri Herald, on three consecutive Thursdays, November 30, December 7 and December 14, 1972, preceding the day of election. Promptly following the election, the county court canvassed the ballots and declared the results to be 350 votes in favor of incorporation and 16 opposed. On December 28, 1972, the county court entered its order declaring the City of Hayti Heights to be an incorporated municipality and by its further order of the same date designated the first officers—mayor, aldermen and police chief—of the town.

Immediately thereafter the city organized and proceeded to conduct municipal business. The first meeting of the city council was held on December 28, 1972 and meetings were held on a regular bi-monthly basis thereafter. A staff was employed, elections were held and real estate and personal property taxes, merchants taxes and license fees were assessed and collected. Plaintiff paid the city real property taxes on her 121 acres for the initial year of incorporation without objection.

Land was purchased by the city and a city hall was constructed. The city began to provide a panoply of municipal services, including full time police protection, fire protection, regular street maintenance, weekly garbage pick-up and street lighting. Regular elections for city officers were held in April 1973 and April 1974. A special election to replace an official was held in October, 1974.

The city received a $375,000 grant from the Economic Development Administration for the construction and installation of a complete water project to supply approved water to all land located within the corpo-

1. This date was more than one year after the action taken by the city council with respect to annexation of Hayti Heights community to the city of Hayti, thus satisfying the waiting time requirement specified by § 72.130.

2. This fact is established from the uncontroverted affidavit so stating of Mayor David Humes filed by defendants as part of their motion to dismiss and in opposition to plaintiff's motion for summary judgment. Section 72.132–2 requires the petition to be filed within said 280 day period.

rate limits. It received a "Step I" grant from the Environmental Protection Agency and from the Missouri Clean Water Commission for the planning of a complete municipal sewer system. The city developed its own twenty-year comprehensive plan for proposed uses of all land within the city limits, including a proposed industrial site located on land owned by the plaintiff and abutting the right-of-way of the proposed state highway by-pass south of the city. The city entered into franchise agreements with the various utilities for electric power, telephone and natural gas services. It participates in the federal Revenue Sharing Program and shares in the state gasoline tax proceeds.

On December 20, 1974, after the defendant city had conducted itself for nearly two years in a manner not unlike any other incorporated municipality in this state, plaintiff, owner of property within the corporate limits of Hayti Heights, filed a petition by which, as stated, she collaterally attacked the prior incorporation.

The circuit court overruled defendants' motion to dismiss and sustained plaintiff's motion for summary judgment. In so doing the court found numerous deficiencies in the incorporation proceedings, declaring them null and void on their face and that the judgment of the county court authorizing "annexation" was likewise null and void.

The circuit court, however, did not address and made no finding or declaration as to defendants' assertion of laches on the part of plaintiff or the effect of the absence of an appeal from the county court's order calling the election or its order of incorporation.

### I.

■ To begin with, the laches issue, in our judgment, cannot be ignored. "The rule has existed in Missouri for many years that the State may be barred by laches from successfully maintaining an action in quo warranto attacking the validity of a village, city or school district." *State on inf. Eagleton v. Champ*, 393 S.W.2d 516, 528 (Mo. banc 1965). If the state itself can be barred by laches, certainly it follows that a private individual making a collateral attack as here on the validity of the incorporation of a town can likewise be barred by laches. "[T]here is no fixed amount of time which must elapse [before laches is available], each case being decided on its particular facts." *Id.* at 528.

"The general meaning of laches is that the party seeking relief has delayed his action for an unreasonable and unexplained length of time resulting in disadvantage to the other party." *State ex rel. King v. Village of Praethersville*, 542 S.W.2d 578, 580 (Mo.App.1976). In the *Praethersville* case, laches was held to bar an attack by quo warranto even though the boundaries of the village, which had only about 40 houses and occupied not over 40 acres, encompassed an additional 1,460 acres of farm land, with which the village had no particular connection.

The principles involved are well stated in *State ex rel. Maddersen v. Nohle*, 16 N.D. 168, 172–73, 112 N.W. 141, 143 (1907), a case where the delay of less than two years on the part of a private individual in attacking collaterally the validity of the organization of a county was held to constitute laches and a bar to maintenance of the action, the court saying:

In applying the doctrine of laches or the rule of estoppel by acquiescence, no fixed time will be taken as controlling, but the facts in each particular case must govern the court's decision, and where, as in this case, although but about two years have elapsed since the county was organized, grave consequences would inevitably follow to a large number of people as a result of relator's successful prosecution of the proceedings, and no perceivable benefit to any person would be obtained thereby, this court is justified, if not required, by the plainest principles of jurisprudence to deny the relief prayed for by exercising its undoubted discretion to refuse the writ. . . . Conceding the unconstitutionality of the law in question, . . . we hold . . . that it

would be a gross abuse of the discretion lodged in this court in such cases to grant the relief prayed for, 'and thereby precipitate the governmental chaos which would immediately and certainly result from such action.' The Supreme Court of Illinois in *McCormick v. Kreinke*, 179 Ill. at page 308, 53 N.E. 549, in disposing of a similar question in which relator had waited three years before making application, held to the same effect. To grant the relief which relator asks would, in our opinion, unnecessarily open up an indefinite field of strife, confusion, and litigation without any corresponding benefits to relator or any other person, and as was said in *State v. Des Moines*, 65 N.W. 818, 96 Iowa 521, 31 L.R.A. 186, 59 Am.St.Rep. 381, "the law does not demand such a sacrifice for merely technical reasons." It follows that the application should be denied, and it is so ordered.

Efforts by defendants in the present case toward incorporation commenced in 1971. The petition for incorporation was filed on November 13, 1972. An election was held on December 19, 1972, after published notice in the Hayti newspaper (Missouri Herald). The order of incorporation was made on December 28, 1972. User by the city of the incorporation thus supposed to have been acquired began at once, specifically, to repeat, as follows: (1) the newly designated mayor and aldermen proceeded to organize and conduct municipal business; (2) the first meeting of the city council was held December 28, 1972 and meetings were held on a regular bi-monthly basis thereafter; (3) regular elections for city officers were thereafter held and a special election was held in one instance; (4) land was purchased and a city hall was constructed; (5) a staff was employed, including a city administrator, city clerk, treasurer, and city attorney; (6) the city began providing full time police protection, fire protection, regular street maintenance, weekly garbage pickup and street lighting; (7) real estate and personal property taxes, merchants taxes and license fees were assessed and collected; (8) the city developed a twenty-year comprehensive plan for proposed uses of all land within the city limits, including a proposed industrial site located on land owned by plaintiff; (9) the city was recognized by other branches of government, having received $375,000 from the Economic Development Administration for a water system to supply the entire corporate area, which water project is nearing completion ahead of schedule, a grant from the Environmental Protection Agency and the Missouri Clean Water Commission for planning of a municipal sewer system involving a project of approximately $1,000,000, funds from the federal revenue sharing program and its share of the state gasoline tax proceeds, and (10) it entered into franchise agreements with utilities for electric power, telephone and natural gas services. In addition, the city organized a Civil Defense "disaster operations office", joined the Missouri Municipal League, and participated in state and federal law enforcement assistance programs.

Municipal activities such as above were among those referred to in the *Champ* opinion, *supra*, as factors relevant to the application of the laches doctrine.

██ As said, on December 20, 1974, plaintiff filed her petition attacking the incorporation. The record does not show exactly when plaintiff first became aware of the incorporation.[3] It is not unreasonable to say that plaintiff is charged with notice that her land was within the city limits once the municipality was established, the same as all other property owners therein. *See State on inf. Bates ex rel. Center Creek Mining Co. v. City of Carterville*, 183 S.W. 1093, 1095 (Mo.App.1916). In any event, we do know that plaintiff paid the 1973 real estate taxes to the city without objection or protest. This means she was aware of the incorporation at least by some time in 1973. She did not at that time resist the incorporation or attack its validity or change her attitude of acquiescence to one of protest

3. Defendants directed interrogatories to plaintiff asking for this information, but these interrogatories, for reasons not disclosed by the record, were never answered by plaintiff.

until a few days short of two years, during all of which time the city moved steadily ahead in its user.

■ There is another factor to be considered here. Even in quo warranto, where the state itself is challenging the existence of the municipality, the state must show some "detriment to accrue from permitting the municipality to continue." *State on inf. Eagleton v. Champ, supra* at 528–29. "Generally speaking, the state should show some equity in favor of suddenly blotting out the legal existence of a town after long tolerating it as a working municipality." *State ex rel. King v. Village of Praethersville, supra* at 581. As said in *State on inf. Wallach ex rel. H. B. Deal & Co. v. Stanwood,* 208 S.W.2d 291, 296 (Mo.App.1948), "[t]he equities revealed by the evidence show that the corporate existence of this village had gone unquestioned for over ten years, during which time it had grown and prospered. It has elected its officers annually, levied taxes, contracted for water and fire protection, put up street signs, repaired streets, caused fire hydrants to be installed, and enacted ordinances. It is not in debt but, on the contrary, it has a fair balance in the bank. These are the equities that favor the village, while on the part of the relator . . he brings this action to render void the existence of the village so that he will be unhampered. . . . Villages are important segments of our political structure affording those citizens with common interest who live in close relationship with each other the means through which their local problems can be solved, the law enforced, and community interests advanced. The courts are hesitant to say that an omission or error in the incorporation of a village brought to attention many years after it occurred makes a nullity of the village's corporate existence and its officers usurpers of powers and duties that do not in law exist. The equities must strongly favor the State before it can be so held . . . ."

■ Again, if the state itself must show strong equity in its favor when it is proceeding with a direct attack in quo warranto, no less should be required of a private individual making a collateral attack against the village or municipality.

In *Champ, supra,* in holding the state barred by laches, we looked to the extent of reliance upon the corporate existence of the municipality and the absence of any foreseeable detriment to accrue to the state or the public from permitting the municipality to continue. In the present case a private taxpayer has waited two years following incorporation to challenge collaterally the validity of Hayti Heights. She paid the city real property taxes for the initial year of incorporation without objection, but now decides to avoid further taxes by having the city declared out of existence. This would serve her personal interest on one hand, but it would adversely affect well over a thousand persons on the other hand who live in Hayti Heights,[4] to say nothing of the chaos it would produce in the undoing of over five years of municipal existence. It would render lifeless a community government which has been providing to its citizens city service such as water, police and fire protection, street improvements and garbage collection, none of which they had when they first sought to become an incorporated town.

Plaintiff has made no averment with respect to any foreseeable detriment to the state or the public on account of the continued corporate existence of Hayti Heights and none comes to mind. We have already pointed out the reliance of others, including the state and federal governments, upon the validity of the Hayti Heights incorporation and the record of continued, active municipal existence. The ownership of public property and facilities, the responsibility for operation of the water system, or perhaps its abandonment, the loss of value of all of the funds which have gone toward the planning of a sewer system, the obliga-

---

4. We know from the census figures that the 1970 population of the Hayti Heights community, prior to incorporation, was 1,232. Accordinging to the record before us, in 1972 the population of the incorporated area was 1,900.

tions under numerous contracts and the ownership of monies in the possession of the city are but a few of the multitudinous problems which would be created by the invalidation of the incorporation of the city. The public peace of the community and security of person and property would be impaired, leaving the citizens without organization, administration, or corporate privileges, with no compensating benefits elsewhere, save leaving plaintiff unhampered. On balance the equities are strongly in favor of the town.

Application of the doctrine of laches is entirely justified as a bar to plaintiff's challenge to the corporate existence of Hayti Heights.

## II.

In *Champ, supra,* the fact that the attempted incorporation would otherwise have been declared null and void did not stop this court from holding that by reason of its laches the state would not be permitted to succeed in setting aside the incorporation. Plaintiff nevertheless persists in her contention that incorporation of Hayti Heights was null and void on its face. Even if there were no question of laches in the case, plaintiff necessarily must claim the incorporation is void, because if Hayti Heights attained a de facto status, plaintiff concedes she would then have no standing to maintain a collateral attack. Repeatedly, this court has recognized and applied the doctrine that the existence, use and exercise of a franchise granted by the state including the existence and legality of a municipal corporation can only be challenged directly by the sovereign through the use of an information in the nature of quo warranto. *White v. City of Columbia,* 461 S.W.2d 806 (Mo. banc 1970); *Three Rivers Junior College District of Poplar Bluff v. Statler,* 421 S.W.2d 235 (Mo. banc 1967); *State ex rel. Junior College District of Sedalia v. Barker,* 418 S.W.2d 62 (Mo. banc 1967); *Spiking School District v. Purported "Enlarged School District R–11, DeKalb County Missouri",* 362 Mo. 848, 245 S.W.2d 13 (1952). We here reaffirm our holding in the foregoing cases.

To establish that Hayti Heights did not attain de facto status, plaintiff asserts the following violations of the incorporation statutes: failure properly to request annexation as a precondition to separate incorporation; failure properly to date each signature on the petitions for incorporation; failure to designate polling places for the incorporation election; failure to file a proper plat; inclusion of too large an area of farm land on the incorporation; failure to state facts showing that the proposed city shall have the ability to furnish normal municipal services within a reasonable time, and failure to notify plaintiff of the commencement and conclusion of the incorporation proceedings, which plaintiff claims deprived her of her property without due process.

The claim that the petitioners did not properly request annexation to the city of Hayti as a precondition to separate incorporation, as required by § 72.130, is not valid. Plaintiff argues that what was presented to the city council of Hayti was not a petition, as it was couched in terms of the desire of the residents of Hayti Heights community to see their area developed with water, sewers, street and adequate housing. However, there would be no point in presenting such a request to Hayti unless the area were to be annexed to Hayti. Hayti would have no way or incentive to supply such services to unannexed areas. However denominated by the petitioners, it is undisputed that the city council of Hayti denominated and treated the document as "a petition for annexation of that community into the City Limits of Hayti so as to secure water, sewer, fire protection, police protection, street improvements, garbage collection and other city services." In addition, the minutes of the meeting of the Hayti city council of October 17, 1971, defendants' exhibit 1 attached to defendants' answer to interrogatories, disclose the opinion of the petitioners that it might be advantageous for the Hayti Heights community to incorporate as a separate town, which it was pointed out could not be done without the consent of the Hayti city coun-

cil. Accordingly, the council thereupon voted unanimously to grant the consent. There is no merit, therefore, to the contention that what was presented to the council was not a petition within the meaning of § 72.130.

As to plaintiffs' claim that the incorporation petitions were void for the reason the signatures were not dated, we point out, first, that § 72.080, RSMo (Supp.1975) provides how an unincorporated area may become incorporated. One requirement is the presentation to the county court of a petition containing certain information by qualified electors equal to 15% of the votes cast in the last gubernatorial election in the area in question. If the county court is satisfied that the required number of qualified electors has signed the petition, it is to call an incorporation election, and if the incorporation carries, then the county court is to declare the area incorporated. It is important to note that the record shows that the county court found and declared that said petition had been filed "in accordance with Sec. 72.080", a judgment which is conclusive in a subsequent collateral attack, as discussed later herein.

Section 72.132, RSMo (Supp.1975) deals further with the petition. Plaintiff's objection and also that of the trial court is based upon the failure of the petition for incorporation to set forth the day, month, and year on which each signature was affixed as required by § 72.132(1); from this plaintiff argues that it follows there was no way to determine from the petition itself that it was filed within 280 days of the first signature and therefore the petition for incorporation was "absolutely void."

Section 72.132 reads as follows:

1. Every inhabitant signing such petition shall state his street address or rural post office box number and route together with the month, day and year on which he affixed his signature thereto.

2. Every such petition shall be presented to the appropriate county court or county council within two hundred eighty days following the date on which the first signature was affixed to such petition, or any part thereof. Failure to so present such petition within the foregoing time period shall render such petition absolutely void.

However, the statute does *not* say that petitions containing signatures without giving the date of each signature are void. What the statute says is that *failure to present the petition within 280 days* after the first signature is what makes it void. Nor does the statute say that the only way the county court can determine the timeliness of presentation of the petition is by computing the 280 days by examining the petition alone, so that lack of dates on the signatures would leave the county court powerless to act in favor of incorporation. The sanction of subsection (2) applies upon a failure "to present such petition within the foregoing time period" and *not* to a failure to date each signature.

The county court was obligated to know that those who signed were qualified electors and that the petition was not stale. Unless we are to presume the county court violated its duty, we know that in the instant case the county court was satisfied the signers were qualified electors and that the petition was presented within 280 days of the first signature, because the court ordered an incorporation election, something it is empowered to do only upon presentation of a petition by the required number of qualified electors within 280 days of the first signature.

The county court may have made this determination by its own investigation or knowledge, by questioning, by asking the signers, or talking to Mayor Humes, or by other means of inquiry to ascertain (1) that the signers were qualified electors and (2) the date when the first signature was affixed. There is no requirement that the county court be limited to the petition itself. In fact, even were the signatures dated, the county court might not be satisfied that the dates on the petition were actually the dates on which the signatures were affixed. The requirement of subsection (2) is related to the date on which the first signature *was affixed* thereto, not the date which might be given as that date.

Subsection (1) is for the benefit and convenience of the county court and if the county court is satisfied otherwise that subsection (2) is met, failure of the signers to date their signatures does not make the petition, or the election, or the order of incorporation, void.

While no Missouri case squarely in point has been cited or found, the case of *People ex rel. Bourdette v. City of Belmont,* 100 Cal.App. 537, 280 P. 540 (1929) is instructive. In *Belmont,* a California statute required that the signers of a petition for incorporation "shall at the time of so signing such petition on paper affix thereto the date of such signing." This the petitioning incorporators failed to do, triggering an action in quo warranto to set aside the incorporation, with allegations made concerning the facial invalidity of the petition similar to those raised here. The California court analyzed the statute and found that while "noncompliance therewith is a justification for refusal by the proper officer to certify as sufficient the names of the signers as to whose signatures the dates of signing are not affixed . . .", nevertheless

> [W]here the officers whose duty it is to determine the sufficiency of the petition from the registration records found the same to have been signed by the requisite number of qualified electors, the fact that the dates of signing were not affixed by them but by another will not render void the proceedings based thereon . . In other words, the provision of the statute requiring signers to petitions "to affix thereto the date of such signing," while mandatory on the petitioners, is for the benefit or convenience of the clerk whose duty it is to check the signatures on the petition with the registration records to determine whether or not the persons signing are qualified electors, and while the clerk is not required to go beyond an examination of the petition itself . . . he having done so, and having found the signers of the petition to be qualified, in the absence of fraud his determination of this question is final.

*Id.* 100 Cal.App. 537, 280 P. at 541.

The court said further: " '. . . the making of the order for the election implies . . . also that such determination was reached upon proofs satisfactory to the board. The statute makes no provision as to the character of proof essential in such a case . . . .' " *Id.* 100 Cal.App. 537, 280 P. at 542.

Nor does the statute in our case.

■ As has been said, in the case at bar, the county court declared that said petition had been filed "in accordance with § 72.-080", into which § 72.132, supra, must necessarily be read. That judgment is conclusive in a subsequent collateral attack, *Western Tile & Timber Co., v. Pulliam,* 237 Mo. 1, 139 S.W. 144, 148–49 (1911); *Lingo v. Burford,* 112 Mo. 149, 20 S.W. 459 (banc 1892). In *Lingo,* a collateral challenge to drainage construction as authorized by the county court, the county court recited that "due notice has been given according to law" without any record as to the basis for its determination. We said then 112 Mo. 149, 20 S.W. at 460:

> That the county court was only authorized to entertain the proceeding to condemn plaintiff's land for the road, upon notice given as required by the statute, . . . is not to be questioned, but it is a well-settled principle that, where the jurisdiction of an inferior court depends upon a fact which said court is required to ascertain and settle by its decision, its decision is conclusive as against a collateral attack . . . Twenty days' notice of this application was required. The statute required "proof of notice having been given as required." The county court was the tribunal authorized to hear and determine the sufficiency of the proof. It was not required by law to spread on its record the evidence by which it ascertained that notice had been given. It did find and spread on its record that "notice had been given according to law." This was a fact *in pais,* to be established by evidence, and its power to proceed further in the case depended upon the giving or failure to give this notice. It judicially ascertained it was

given, and we think that it is conclusive as against a collateral attack.

In *In re Village of Lone Jack,* 419 S.W.2d 87, 90–91 (Mo. banc 1967), we agreed with the holding of the Kansas City Court of Appeals in *In re Proposed Incorporation of the Village of Pleasant Valley,* 272 S.W.2d 8 (Mo.App.1954). *Pleasant Valley* held that doubt shall be resolved in favor of the order of the county court on the question of whether the petition for incorporation was signed by the required number of taxable inhabitants, although the record did not contain evidence on that question.

Such is the case here. The legislature has vested the county court with jurisdiction to declare a town incorporated upon being satisfied as to certain facts. The county court determined that the petitions challenged here were not stale and were filed in accordance with the statute. Section 72.132(1), supra, is for its benefit and convenience only and it concluded, notwithstanding the absence of dates, that the petitions were valid. That finding, in this collateral proceeding, is conclusive. Thus in the context of a legal challenge to the sufficiency of the petitions, the violations of the language of subsection (1) should not trigger a finding that the incorporation was a nullity. *See* E. McQuillin, The Law of Municipal Corporations § 3.46 (3rd ed. 1971).

As to the claim that the county court failed to designate polling places for the incorporation election, one of the plaintiff's own exhibits—one of the answers of defendants to plaintiff's interrogatories—is a copy of the notice of special election as ordered by the county court on November 13, 1972. This order designates the polling places and also specifies the hours between which the polls shall be open. In addition, plaintiff put into evidence the order of the county court appointing the judges and clerks, the order for their payment, and the order casting up the ballots. Plaintiff's witness, John M. Alford, county clerk, testified there was no order of the county court designating a polling place in the bound records or anywhere else in his records, which plaintiff contends makes the entire election null and void. At the most, now that the election is over, with no claim that any voter was misled or deceived by the claimed failure of the county court to issue a separate order designating the polling places, in addition to the order it *did* make for notice of the election (wherein the polling places were plainly designated) this is a procedural irregularity which does not void the election. *See State ex inf. Fleming ex rel. Alexander v. Zimmerscheid,* 559 S.W.2d 178 (Mo. banc 1977).

As to the alleged inclusion of too large an area in the incorporation, specifically with reference to plaintiff's 121 acres of farm land, plaintiff has made no showing which would warrant a declaration that the incorporation was thereby void on its face. The proposed area of incorporation was 618 acres with a population of 1,900. The entire area proposed to be incorporated was something less than one square mile, which is not on its face unreasonable or overwhelming. The Hayti Heights community occupies approximately 174 acres and its population as of the 1970 census was 1,232 persons. While we do not know exactly how long Hayti Heights has been in existence as a community, it had existed long enough to have acquired 1,232 persons by 1970. It is safe to say this did not happen overnight.

Plaintiff's land would be slightly less than one-fifth of the proposed incorporation. Her property is needed as an area for future industrial and commercial locations. It is bounded on the west and south by roads and a portion of the north boundary is the location of the proposed highway 84 by-pass, which will be a heavily travelled route with potential for commercial and industrial development. Scrutiny of the current Missouri Official Highway Map, of which we take judicial notice, shows that such a by-pass would lead directly south and east of Hayti Heights and Hayti into Interstate 55 and Interstate 155.

Simply because there is farm land in the proposed incorporation does not mean that it is void. Section 72.080 is no longer limited to incorporation of unincor-

porated cites or towns, as was once the case, *Petition to Incorporate the City of Duquesne,* 322 S.W.2d 857 (Mo.1959). By amendment in 1971 it has been broadened to include "Any unincorporated city, town or other area". Laws 1971, p. 146, § 1. The issue is whether the rural or agricultural area has a natural connection with and constitutes a part of the unincorporated city or town within the area incorporated by the county court. What evidence there is in the record indicates that the land outside Hayti Heights was within its natural boundaries and that there was a community interest with the pre-existing unincorporated village. There is no evidence to the contrary and under the circumstances this was a matter to be resolved initially by the county court, which ruled the question in favor of incorporation. Certainly the amount of rural or agricultural land included in the incorporation is not so extreme or unreasonable as to make the incorporation void.

As to the contention that there was an insufficient statement of facts in the petition showing ability of the proposed city to furnish normal municipal services within reasonable time, the petitioners cannot be expected to set forth every detail or read the future. Here the petition refers to the past help of Hayti Heights Development Corporation, something which presumably would be known to the county court and the voters, as well as to expected further help from the same source. It also refers to expected help from the Bootheel Regional Planning Commission and the Missouri Department of Community Affairs, both of which are plausible expectations. It refers to anticipated tax and revenue sharing programs, and it is common knowledge that towns and cities do obtain such revenue these days.

While it is true these assurances are rather broad and imprecise, we know from the considerable municipal activity which has taken place in Hayti Heights following incorporation that the claims were not far-fetched or made in bad faith. We must bear in mind that the Hayti Heights community was not in the position of an already established town with municipal serv-ices which could readily be extended. It had no municipal services. We cannot expect the impossible and such a community necessarily has to lift itself by its bootstraps to some extent. At any rate, we do not believe that the foregoing was insufficient to constitute a colorable compliance with the statute or that it was so lacking in factual quality as to prevent the municipality from achieving de facto status under the facts before us.

■ The facts before us are that the petition for incorporation filed with the county court received both the approval of the county court and the approval of the voters, which we believe bears on the sufficiency of the petition. "This statute [Sec. 72.080] is not a grant of power to the governing body of counties. It is a grant to the majority of the electors of an unincorporated area of the right to incorporate." *State ex rel. Boone v. Jackson County,* 541 S.W.2d 312, 315 (Mo.App.1976).

"We next consider what the obligation or role of the governing body is when a petition to hold an election to incorporate is presented to it. Certainly, the statute requires it to satisfy itself that the required number of qualified electors have signed the petition. Since no other agency is designated and the petition is filed with the governing body of the county, it is apparent that this governing body is required to determine the sufficiency of the statements to be contained in the petition. But nothing in the statute authorizes them to substitute their judgment for that of the electors as to whether or not the proposed incorporation is feasible and beneficial. . . .

"It appears to us that the function of the governing body is to determine the legality of the proposed incorporation before declaring an election. Whereas it is the function of the voters to determine if the proposed incorporation is feasible and beneficial to their interest." *Id.*

"From the Duquesne case we conclude that the respondent could investigate and if it determined that the facts stated in the petition showing that the proposed city

should have the ability to furnish normal municipal services within a reasonable time were false, or that the facts stated patently showed that the city could not furnish normal municipal services within a reasonable time, it would be authorized to deny the petition. In fact, it would be its duty to do so to prevent the illegal creation of a city or to prevent the useless expense of holding an election to create a city that was subject to being ousted by a writ of quo warranto. . . . ." *Id.* at 316.

In the case at bar, there is nothing to show the county court did not perform its duty. On the contrary, the fact it ordered the election shows that it concluded the petition did conform to the requirements of the statute. Once the proposition was submitted to the voters, their judgment was that the proposed incorporation, as set forth in the petition, was feasible and beneficial to their interest. Plaintiff has made no showing overcoming these evidences of the sufficiency of the petition in all respects.

 Furthermore, plaintiff is, in effect, asking us to judge the petition now as it would have been viewed had prohibition been sought in circuit court seeking to prohibit the county court on the basis that the petition was defective in the respect now contended by plaintiff as to furnishing of municipal services. But that time is gone. The county court acted, the election was held, the city was incorporated, and it has since been operating as a city. We necessarily apply a much less exacting scrutiny now than would have been the case earlier. The point is overruled.

 Plaintiff's contention that the plat which was filed with the incorporation petition is so deficient as to void the incorporation is without merit. We have examined the plat and compared it with the metes and bounds description contained in the petition. Section 72.080 does no more than require that the petition be accompanied by a "plat". The one before us, while not a model, was, when taken with the metes and bounds description, reasonably understandable, we feel sure, by anyone acquainted with the area, as would be true of the

county court and the voters. The important thing is that the territorial limits of the proposed incorporation be sufficiently delineated. Here that was done and it is not claimed this aspect of valid city government is missing. *City of Hannibal v. Winchester*, 391 S.W.2d 279 (Mo.banc 1965). There is no indication that the county court was misled by the plat or that it prevented anyone from knowing the area to be incorporated.' *City of Cape Girardeau v. Armstrong*, 417 S.W.2d 661, 664 (Mo.App.1967). By no means does this plat serve to void the incorporation.

 We have no difficulty in concluding that Hayti Heights has attained at least a de facto status as a municipality and so hold. In spite of deficiencies in the course of incorporation, a municipality may nevertheless be recognized as a municipal corporation de facto when there is: (1) a law under which it might lawfully have been incorporated; (2) an attempted compliance in good faith with the requirements of the statute as to incorporation; (3) a colorable compliance with the statutory requirements; and (4) an assumption of user of corporate powers. *State ex rel. Hand v. Bilyeu*, 346 S.W.2d 221, 230 (Mo.App.1961); E. McQuillin, The Law of Municipal Corporations § 3.48a (3rd ed. 1971); C. Rhyne, Municipal Law § 2–21 (1957). Each of the above elements is abundantly present. No claim is made by plaintiff in her petition of bad faith and no indication of bad faith appears in the record on the part of defendants. Additionally, we observe that plaintiff's petition accepts the fact that a petition for incorporation was filed, that an election was held, that an order of incorporation was entered by the county court and that all times thereafter the city of Hayti Heights has purported to exist as a municipal corporation and purported to exercise municipal jurisdiction over the farm lands of plaintiff and has levied and assessed real estate taxes on her land.

 Plaintiff's final contention is that she, a non-resident of the area proposed to be incorporated, was deprived of due proc-

ess because she received no notice or an opportunity to be heard before the county court on the question of whether her land should be included in the proposed area and whether sufficient grounds existed for incorporating Hayti Heights. Plaintiff is aware that § 72.080 contains no requirement of notice either of the filing of the petition or of the intention of the county court to act on the petition. What it does require is an election and, as has been stated, public notice was given of the election and the proposition passed. Non-residents, of course, do not vote in any election.

Plaintiff concedes that the court in *In re City of Uniondale*, 285 Mo. 143, 150–51, 225 S.W. 985, 987 (1920), held that no notice was required. There the court was considering § 8529, RSMo 1909, the predecessor of § 72.080. Under § 8529 no election was required, merely a petition filed by a majority of the inhabitants, upon which the county court was authorized to declare the city incorporated.

The court said:

No notice of any kind is required. It is not necessary that the petition shall have been on file for any length of time, or even that it shall have been filed at all, before being taken up for consideration by the court. Upon its presentation the court may immediately proceed to determine whether it is signed by a majority of the taxable inhabitants, and, if it is satisfied that such is the case, may make its order of incorporation without further ado. Not only, therefore, is notice not required, but the statute does not contain the slightest implication that the taxable inhabitants of the territory sought to be incorporated, who do not sign the petition, may appear and contest it. It must be borne in mind that this proceeding is not an 'action,' within the meaning of the code wherein any person may be a defendant who has or claims an interest in the controversy adverse to the plaintiff. It is a special statutory proceeding. The statute that created the right provides the remedy and prescribes the procedure. It is complete within itself, and it alone,

therefore, determines who may be parties. . . .

It is said that taxpayers who are opposed to incorporating a given territory into a city should be accorded the right to be heard in a proceeding instituted for that purpose, because, if sustained, it subjects them to the burdens of municipal taxation. In answer to this contention it is sufficient to say that the giving or withholding of such right is a matter that rests wholly within the discretion of the Legislature. It is not essential to the validity of the proceeding that all taxpayers who may be affected thereby have their day in court. The Legislature has the power to incorporate territory into a city with or without the consent of its inhabitants . . . provided it does it by general law . . . . And while the county court in passing upon the petition is performing a judicial function, and its pronouncement thereon is a judgment, yet all the agencies invoked by the statute—the majority of the taxable inhabitants, their petition and the county court—taken collectively, is but the instrumentality through which, in the manner prescribed, the legislative power is exercised in creating cities of the forth class.

Also in point is *State ex rel. Scott v. Lichte*, 226 Mo. 273, 286-88, 126 S.W. 466, 469 (1910), where prohibition was sought to keep the county court from entertaining jurisdiction of a petition praying for the incorporation of Bellflower. The petition was filed under § 6004, RSMo 1899, which authorized the county court to incorporate on a petition signed by two thirds of the taxable inhabitants of the town, with no requirement of election or notice. In answering relator's contention that this deprived the parties whose lands were to be included in the corporation of their property without due process of law, the court said:

Relator misconceives the purpose of the statute and the purpose of the petition under it in the county court. He is not in any event to be deprived of his property; he is only liable, if the petition should be

granted, to have an additional arm of state governmental protection extended over his property, and a tax levied to pay the expense. The state is not required to give notice when it purposes to take action for the better government of its people, or when it will levy taxes. The creation of a municipal corporation is an act of state sovereignty; the corporation is created to aid the state in the exercise of its sovereign power, to preserve the lives, the health, the liberty of its people and the protection of their property—it is an arm of the state. Formerly cities, towns and villages were incorporated only by special acts of the Legislature, and when so the Legislature never waited to notify the owners of the land that it was intending to create a municipal corporation that would include their lands or asked if they had anything to say why it should not be done. No one ever questioned the power of the state to so act without previous notice to the landowners. But in modern times, because the legislative department of the state government has not time to spend in making a special charter for every community that feels the need of a municipal government, and also for the sake of uniformity in such charters, it has with sanction of the constitution passed general laws delegating that governmental power to the courts, and directing how it shall be exercised. . . . Since the state, acting through its legislative department could create a municipal corporation without giving notice to the owners of the property without violation of section 30, article 2 of the Constitution, which says, "No person shall be deprived of life, liberty or property without due process of law," the state can likewise do so through any other department of its government to which it may choose by its Constitution to delegate the power.

■ Plaintiff cites *Greene v. St. Louis County*, 327 S.W.2d 291, (Mo.1959) in support of her claim about lack of notice, but there the statute governing proceedings for the widening of the road required notice to be given and it was on such basis that the court held the notice to be jurisdictional.

Section 72.080 does not require notice. As has been said in the cases cited earlier herein, the power to create a municipal corporation is a political function, resting solely in the legislative branch and not subject to due process requirements for notice. *See Hunter v. City of Pittsburgh*, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907); *J. A. Bruening Co. v. Liberty Landing Levee Dist.*, 475 S.W.2d 125 (Mo.1972); *Honey Creek Drainage Dist. v. Farm City Investment Co.*, 326 Mo. 739, 32 S.W.2d 753 (Mo. 1930); *State ex inf. Gentry v. Hughesville Special Road Dist.*, 319 Mo. 1246, 6 S.W.2d 594 (banc 1928).

As a part of the political function mentioned above, the legislature decided, as set forth in § 72.080, to let the people in the affected area vote on the proposition of incorporation. An election was held in this case. Plaintiff did not act until after the election went against her. *See State ex inf. Fleming ex rel. Alexander v. Zimmerscheid, supra.*

### III.

■ Defendants point out, as they have throughout this litigation, that the judgment of the circuit court in the present case, involving as it does a collateral attack on the order and judgment of the county court declaring Hayti Heights to be a city of the fourth class, overlooks the fact that no appeal was taken from the order of the county court, which therefore is res judicata and not susceptible to collateral attack. Defendants rely on *In re Town of Blue Summit*, 461 S.W.2d 332 (Mo.App.1970).

In the *Blue Summit* case, the original order of incorporation of the town of Blue Summit was entered by the county court on April 11, 1967. No appeal was taken from this order. Subsequently, on September 19, 1967, the county court amended its order by entering another order of incorporation. Then on April 9, 1968, after a third hearing, the county court entered an order affirming the original April 11 order as amended by the September 19 order. It was from the April 9, 1968 order that the opponents of

the incorporation appealed to the circuit court. The circuit court reversed the county court. The proponents of the incorporation then appealed to the court of appeals, which held that the county court order of April 9, 1968 was null and void because the original order of April 11, 1967 had been final and res judicata and Blue Summit would continue as an incorporated town unless a contrary declaration was made in a direct attack by quo warranto. Of special interest to our case is this language of the opinion:

> The proposed town of Blue Summit was judicially declared to be "a body politic and corporate as a town" on April 11, 1967, by order and judgment of the county court entered on that day. The opponents of that action slept on their statutory rights of appeal or review and permitted that judgment to ripen into finality.[5] Under the doctrine of res judicata it still stands as a final determination that the town of Blue Summit has been constituted a municipal corporation, and it will so remain until and unless a contrary declaration is made by a court of competent jurisdiction in a direct proceeding in quo warranto instituted for a specific purpose of ousting it from exercising municipal functions. The possibility that the April 11, 1967, judgment may have been erroneous, even on its face, does not render it void or lessen its effect as to res judicata.

*Id.* at 336.

We agree with the *Blue Summit* decision on the point under consideration and the order of incorporation of Hayti Heights by the county court in the absence of appeal, is "impregnable to collateral assault" and the circuit court was without authority or jurisdiction to reverse it.

For the various reasons set forth above, the judgment is reversed and remanded with directions to the circuit court to enter judgment in favor of defendants.

5. It has since been said in *In re Incorporation of City of River Bend*, 530 S.W.2d 704, 707 (Mo.App.1975) that appeal under § 49.230 and Chapter 536 are not alternative methods of appeal from a county court's decision on a municipal incorporation petition, in light of the

BARDGETT, FINCH and RENDLEN, JJ., concur.

MORGAN, C. J., and HENLEY and DONNELLY, JJ., dissent.

exception in § 536.100, RSMo 1969 and rule 100.03 as to appeals where "some other provision for judicial review is provided by statute." The indication otherwise in *Blue Summit* was treated as dictum.